Gerald E. BOL, a/k/a Gerald
Bol, Sr., Respondent,

v.

Autumn COLE, Ph.D., et al.,
Petitioners, Appellants,

Sandra L. Petron, Kathy R.
Buhr, Defendants.

No. C9–95–2124.

Supreme Court of Minnesota.

March 13, 1997.

Rehearing Denied April 17, 1997.

Trenti Law Firm, J. Carver Richards, Mark A. Muhich, Virginia, for Appellants.

Colosimo, Patchin, Aronson & Kearney, Ltd., John M. Colosimo, Virginia, for Respondent.

Sandra L. Petron, pro se.

Kathy R. Buhr, pro se.

## OPINION

ANDERSON, Justice.

Gerald E. Bol commenced a defamation action against Autumn Cole and Range Mental Health Center, Inc. (RMHC) for releasing to a minor patient's mother and her attorney reports of child abuse naming a "Dr. Bol" as the alleged abuser. The district court granted Cole and RMHC's motion for summary judgment, holding that Cole and RMHC were absolutely privileged to release copies of the child abuse reports to the child's mother and her attorney because the reports were health records subject to release under the Health Records Act, Minn.Stat. § 144.335 (1992). The court of appeals reversed the summary judgment, holding that the reports were not health records and could not be released as such under the Health Records Act. We conclude that Cole and RMHC are protected by a qualified privilege. Accordingly, we reverse.

Appellant Autumn Cole, Ph.D., is a licensed psychologist employed by appellant RMHC. RMHC is a mental health clinic located in Virginia, Minnesota. Respondent Gerald E. Bol is a Doctor of Chiropractic operating the Eveleth Chiropractic Clinic in Eveleth, Minnesota.

In April 1993, Cole began treating S.P., a five-year-old male, because of an allegation that S.P. had been sexually abused by his father. After treatment began, S.P.'s mother, Sandra Petron, expressed concern that S.P. may have been sexually abused by some of his father's friends. During a therapy session on June 21, 1993, S.P. told Cole that he had been sexually abused by a man he referred to as "Dr. Bol." Later that same day, June 21, Cole wrote a letter to two social workers with St. Louis County Social Services, informing them that S.P. stated that a "Dr. Bol" had sexually abused him and reporting S.P.'s statements regarding the alleged abuse. Cole subsequently prepared two additional letters, dated September 8 and October 6, in which she reported additional statements S.P. made to her in continuing therapy sessions concerning sexual abuse by S.P.'s father and "Dr. Bol." In these letters, Cole opined that she found S.P. "fairly credible," his story consistent, and his emotional and behavior problems "typical of children who have been sexually abused." Cole and RMHC released copies of all three letters to Petron and her attorney.[1] Petron showed her copies of the September 8 and October 6 letters to a friend, Kathy Buhr. Petron and Buhr then discussed the contents of the September 8 and October 6 letters in the presence of a third person.

Bol commenced a defamation action against Cole, RMHC, Petron, and Buhr.[2] Bol's claim against Cole alleged that Cole published defamatory statements made by S.P. during therapy sessions and republished the statements by wrongfully giving Petron a copy of the September 8 letter. Bol alleged that the statements published by Cole were "false and untrue" and "imputed the commission of a criminal or indictable offense involving moral turpitude."[3] Bol further alleged that as the result of the publication and republication of the statements, he was injured and damaged personally and professionally. Bol's claim against RMHC alleges

---

1. Bol does not allege that Petron's attorney republished the contents and does not base his defamation claim upon this fact.

2. Bol's claims against Petron and Buhr were not part of the summary judgment motion and are not before this court.

3. After an investigation, the statements made by S.P. against Bol were not substantiated by any independent evidence and the county attorney closed the case without bringing criminal charges.

that RMHC, as Cole's employer, is vicariously liable for Cole's actions.

More than one year after the complaint was served, and after the parties engaged in prefatory discovery, Cole and RMHC brought a motion for summary judgment. Cole and RMHC asserted that they were entitled to immunity under the Child Abuse Reporting Act, Minn.Stat. § 626.556 (1992), and were protected by a privilege because they released the letters in compliance with the Health Records Act, Minn.Stat. § 144.335 (1992). The district court granted Cole and RMHC's motion for summary judgment, holding that Cole and RMHC were protected by an absolute privilege because the Health Records Act required them to release the letters as health records.

The court of appeals reversed the district court. The court of appeals treated the letters as child abuse reports, determined as a matter of law that child abuse reports are not health records, and held that Cole and RMHC were not immune from suit. Cole and RMHC appeal, claiming: (1) they are immune from defamation liability under the Child Abuse Reporting Act, Minn.Stat. § 626.556; (2) they are protected by an absolute privilege because the Health Records Act required them to release copies of the letters to Petron; and (3) they are protected by a qualified privilege because they released the letters to Petron in good faith and without malice.

I.

■ A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal from summary judgment, this court reviews the record to determine whether there are any genuine issues of material fact and whether the lower courts erred in their application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). On review, this court views the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.* Questions of law, including the interpretation of statutes, are subject to de novo review. *Metropolitan Property & Cas. Ins. Co. v. Metropolitan Transit Comm'n,* 538 N.W.2d 692, 695 (Minn.1995).

■ For a statement to be defamatory, it must be false, it must be communicated to another, and it must tend to harm the plaintiff's reputation. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). Bol asserts that S.P.'s statements were false and have become a matter of gossip and rumor, causing harm to his personal and professional reputation. For the purposes of this appeal, Cole and RMHC do not dispute that S.P.'s statements, recorded in Cole's letters, were defamatory; that Cole and RMHC published the statements by releasing the letters to Petron; or that Petron republished the statements. Rather, Cole and RMHC contend that they are not liable for defamation because they are protected by both immunity and privilege. Based upon the parties' briefs and arguments, we assume that each of Cole's three letters contains defamatory statements and we decide Cole and RMHC's claims of immunity and privilege with respect to all three letters.[4]

■ Cole and RMHC contend that the Child Abuse Reporting Act grants them immunity from defamation liability because Cole, a psychologist, reported suspected abuse of S.P., a child, to Petron, the child's

---

4. Throughout these proceedings, the parties have inconsistently referenced and relied upon Cole's three letters. Bol's complaint references only the September 8 letter; but, in her deposition, Petron admitted that she showed both the September 8 and October 6 letters to Buhr. Cole and RMHC refer only to the June 21 letter in their motion for summary judgment, while Bol refers to all three letters as "child abuse reports" in his response to the motion. During the district court hearing on the motion for summary judgment, Bol's attorney argued that it was the June 21 letter which was republished by Petron. Both the district court and the court of appeals considered all three letters in reaching their respective decisions. In oral argument before this court, the parties argued the merits of the issues with respect to all three letters. Cole and RMHC admitted in oral argument that, if this case were remanded to the district court, it is likely that Bol would be permitted to amend his complaint to add defamation claims based upon the June 21 and October 6 letters.

parent. In the Child Abuse Reporting Act, the legislature declared a public policy to protect children from physical and sexual abuse. Minn.Stat. § 626.556, subd. 1. In furtherance of this policy, subdivision 3 of the Child Abuse Reporting Act mandates that certain persons have a duty to report child abuse:

> **Persons mandated to report.** (a) A person who knows or has reason to believe a child is being neglected or physically or sexually abused, as defined in subdivision 2, * * * shall immediately report the information to the local welfare agency, police department, or the county sheriff if the person is:
>
> (1) a professional or professional's delegate who is engaged in the practice of the healing arts, social services, hospital administration, psychological or psychiatric treatment, child care, education, or law enforcement; * * *.

*Id.* § 626.556, subd. 3. A person who has a duty to report child abuse under this section and fails to do so may be convicted of a misdemeanor. *Id.* § 626.556, subd. 6.

The parties agree that Cole was required to report S.P.'s allegations and that Cole properly reported the alleged abuse to the social workers, sheriff, and county attorney.[5] The letters properly identified S.P., his alleged abuser, and the nature and extent of abuse. *See id.* § 626.556, subd. 7. For the purposes of this appeal, we will assume that all three letters are child abuse reports.

The Child Abuse Reporting Act grants immunity to certain persons who report suspected abuse in good faith:

> The following persons are immune from any civil or criminal liability that otherwise might result from their actions, if they are acting in good faith:
>
> (1) any person making a voluntary or mandated report under subdivision 3 or under section 626.5561 [prenatal exposure to controlled substances] or assisting in an assessment under this section or under section 626.5561.

*Id.* § 626.556, subd. 4(a). This section grants immunity only to persons who report suspected abuse in compliance with subdivision 3. Subdivision 3 requires that a person mandated to report suspected abuse must report the suspected abuse to the local welfare agency, police department, or sheriff. *Id.* § 626.556, subd. 3(a). But subdivision 3 neither requires nor authorizes a person to report suspected abuse to a parent. In this case, Cole and RMHC released copies of the letters to Petron, S.P.'s mother. We have held that statutorily created immunity should be construed narrowly. *Cf. Holmquist v. State,* 425 N.W.2d 230, 231 (Minn.1988) (interpreting "discretionary function" in State Tort Claims Act narrowly). Because nothing in the Child Abuse Reporting Act indicates that the legislature intended to grant immunity to a person who releases a child abuse report to a parent, we hold that Cole and RMHC are not immune from civil liability for their actions under the Child Abuse Reporting Act.

## II.

Having concluded that Cole and RMHC are not immune under the Child Abuse Reporting Act, we must next decide whether Cole and RMHC are protected by an absolute privilege under the common law. We note that absolute privilege and immunity are often used interchangeably as they were in the pleading and argument of this case; but they are different legal concepts and should not be confused. Perhaps the reason absolute privilege is sometimes referred to as an immunity is because it has the effect of making the publisher of a defamatory statement immune from suit and because the cases in which this court has recognized an absolute privilege often involve defamation suits against government officials. *See, e.g., Carradine v. State,* 511 N.W.2d 733, 735–37 (Minn.1994); *Johnson v. Dirkswager,* 315 N.W.2d 215, 221–23 (Minn.1982).

■ After a plaintiff establishes a prima facie case of the tort of defamation, the defendant may raise the defense of absolute

---

5. Although the Child Abuse Reporting Act does not specifically authorize a person to report suspected abuse to the county attorney, Bol's attorney acknowledged in the hearing before the district court that the county attorney properly received the letters.

privilege. When an absolute privilege is granted, defamatory statements are not actionable, even if the statements were made with malice. *See Matthis v. Kennedy,* 243 Minn. 219, 223, 67 N.W.2d 413, 417 (1954). The Restatement (Second) of Torts explains the purpose of granting an absolute privilege:

> These "absolute privileges" are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position. Therefore the privilege, or immunity, is absolute and the protection that it affords is complete.

Restatement (Second) of Torts § 584, at 243 (1977). Section 592A of the Restatement (Second) of Torts provides: "One who is required by law to publish defamatory matter is absolutely privileged to publish it." Section 592A does not require that a publisher of defamatory matter be a government official to be protected by an absolute privilege.

This court cited section 592A with approval in *Dirkswager,* 315 N.W.2d at 223. In *Dirkswager,* the Commissioner of the Minnesota Department of Public Welfare disclosed defamatory information concerning a dismissed assistant supervisor. This court held that the commissioner was absolutely privileged because he was a high-level government official and because he disclosed the information in performance of his public duties.[6] *Id.* at 220–21. Citing section 592A as further support for its decision, this court noted that the commissioner was required to disclose the defamatory information under the Minnesota Government Data Practices Act (MGDPA);

thus, the disclosure was absolutely privileged. *Id.* at 221–23.

■ Citing *Dirkswager,* Cole and RMHC contend that they are protected by an absolute privilege because the Health Records Act required them to release the letters to Petron. Cole and RMHC's reliance on *Dirkswager* is misplaced. *Dirkswager* involved a commissioner who released defamatory information in performance of his official duties, and his absolute privilege stemmed from his immunity as a government official. But Cole is not a government official and RMHC is not a government entity. Cole and RMHC are in essence asking that we extend to them the same absolute privilege that we afforded in *Dirkswager* to a government official who was required by law to disclose defamatory information.

In *Dirkswager,* this court noted that several public interests favored granting the commissioner an absolute privilege including: the commissioner's role in administering the state's hospitals; the public's interest in being apprised of government business; the need to encourage government officials to speak out in the performance of their duties; and the importance of protecting government officials from suit so that they would devote their energies to government service, unencumbered by the fear of lawsuits that might inhibit effective government. This court held that an absolute privilege applied because "the public's right to know" outweighed "a defamed individual's right to redress." *Dirkswager,* 315 N.W.2d at 221.

The public interests implicated by the actions of Cole and RMHC are not as strong as those in *Dirkswager.* Cole recorded S.P.'s statements concerning Bol in S.P.'s patient records. These statements identified and defamed Bol, who was a third party to Cole and S.P.'s psychologist-client relationship. Cole released records containing the defamatory statements to Petron. The public has an interest in encouraging psychologists to record complete and accurate information con-

---

**6.** In *Carradine v. State,* this court extended the doctrine of absolute privilege to lower-level government officers, holding that a police officer had an absolute privilege regarding defamatory

statements in a written police report because of the critical governmental interest involved. 511 N.W.2d 733, 735–37 (Minn.1994).

cerning their patients. Keeping complete and accurate records may sometimes require psychologists to record statements concerning third parties. The public also has an interest in encouraging psychologists to provide full disclosure of health information to their patients without fear of lawsuits by defamed third parties.

■ But we have held that the doctrine of absolute privilege should be "confined within narrow limits." *Matthis*, 243 Minn. at 223, 67 N.W.2d at 417. For absolute privilege to apply, the public interest served must be one of paramount importance, such that it is entitled to protection even at the expense of failing to compensate harm to the defamed person's reputation. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 114, at 815–16 (5th ed. 1984). Affording psychologists an absolute privilege with respect to statements contained in patient records concerning third parties would give psychologists less incentive to accurately record such information and would increase the risk of publication to inappropriate persons.

We conclude that the public interest in protecting a psychologist from a lawsuit by a defamed third party is not sufficiently strong to prohibit courts from inquiring into the psychologist's motives in publishing defamatory statements. Accordingly, we hold that an absolute privilege does not apply to Cole and RMHC in this case.

### III.

■ Having declined to recognize an absolute privilege, we must next decide whether Cole and RMHC are entitled to a qualified privilege. One who makes a defamatory statement will not be held liable if the statement is published under circumstances that make it qualifiedly privileged and if the privilege is not abused. *Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876, 889 (Minn.1986) (citing Restatement (Second) of Torts § 593). Qualified privilege applies when a court determines that "statements made in particular contexts or on certain occasions should be

encouraged despite the risk that the statements might be defamatory." *Id.* For a defamatory statement to be protected by a qualified privilege, the statement must be made in good faith and "must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Stuempges*, 297 N.W.2d at 256–57 (quoting *Hebner v. Great N. Ry.*, 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899)). Whether a qualified privilege exists is a question of law for the court to decide. *Lewis*, 389 N.W.2d at 889 (citations omitted).

■ The evidence demonstrates that Cole chose a proper occasion to inform Petron that S.P. had stated that he had been abused and to tell her the names of the persons he identified as his abusers.[7] Cole was treating S.P. because of allegations that S.P. had been sexually molested. Prior to the June 21, 1993 therapy session, Petron told Cole that she was concerned that S.P. had been molested by his father's friends. S.P. made statements regarding abuse by "Dr. Bol" at the June 21, 1993 session. Cole prepared the June 21 letter as a result of statements S.P. made to her that day, and prepared the two additional letters as a result of comments S.P. made in subsequent sessions. Cole obtained all of the information contained in the letters from S.P. during S.P.'s therapy sessions. Cole released the letters to Petron because Petron requested a summary of what S.P. had been saying in the therapy sessions.

The record also demonstrates that Cole released the letters based upon a proper motive. Petron was concerned that S.P. had been sexually abused by his father's friends, had expressed her concerns to Cole, and had requested information from Cole about what S.P. had been saying in his therapy sessions. In her June 21 letter, Cole noted that some of S.P.'s alleged abusers were living in Petron's vicinity. Cole released the letters to Petron because she believed Petron was entitled to the information contained in the let-

---

7. This is not a case in which the parent who requested a child abuse report is the alleged abuser. In such a case, Minn.Stat. § 144.335, subd. 2(c) may permit the psychologist to withhold the information.

ters, based upon Petron's right as a parent to access S.P.'s health records.

Cole released the letters based upon her reasonable belief that S.P. was being sexually abused. During his treatment for sexual abuse, S.P. stated that "Dr. Bol" had molested him and S.P. provided graphic details concerning the alleged abuse. Cole's preparation of the letters, her statements in the letters, the fact that she mailed the letters to the appropriate authorities, and her deposition testimony indicate that she believed that S.P. had been abused by Bol. In the June 21 letter, Cole noted that S.P. volunteered his statements without being led. Cole reported in the September 8 letter that S.P. had stated that he was telling the truth about the abuse and had denied on numerous occasions that his mother told him to make the statements. Cole stated in her deposition that she released the letters to Petron because she believed Petron had a right to obtain a copy of information in S.P.'s health records, that she believed Petron already knew about the allegations regarding Bol, and that Petron had not exhibited any behavior causing Cole to suspect there would be any reason to keep the information from her.

Cole also had reasonable cause to believe that releasing the letters to Petron was necessary to protect S.P., who was otherwise unable to protect himself. As S.P.'s psychologist, Cole had a legitimate interest in protecting S.P. and a corresponding obligation to inform Petron of S.P.'s statements in response to Petron's request for the information. Cole released the letters to Petron in furtherance of her legitimate interest in protecting S.P., her child patient. Further, Bol has not presented any evidence that, if true, tends to show that Cole did not release the letters based upon reasonable or probable cause.

There is a strong public interest in reporting child abuse and protecting children from further abuse. The public has a strong interest in encouraging a psychologist to accurately assess her patients. When a patient is a child, the psychologist has an interest in providing complete and accurate information to the child's parents so that the parents may make well-informed decisions regarding

treatment and may act to protect the child. Failure to recognize a privilege when information is properly released would place a heavy burden on psychologists to weigh the necessity of releasing information against the potential civil liability for doing so and would thereby deter psychologists from giving complete and accurate information to parents.

Cole prepared the letters in good faith and released the information upon a proper occasion, with a proper motive, and based upon reasonable or probable cause. We conclude that Cole and RMHC are protected by a qualified privilege.

## IV.

■ Because Cole and RMHC are protected by a qualified privilege, Bol, as the plaintiff, has the burden to prove that this privilege was abused because the defamatory statements were made with malice. *Stuempges,* 297 N.W.2d at 256–57. Malice is generally a question of fact. *Id.* at 257. On review of summary judgment, however, this court determines whether the evidence submitted raises any genuine issues of material fact. *Offerdahl,* 426 N.W.2d at 427.

■ Malice is defined as "actual ill-will or a design causelessly and wantonly to injure plaintiff." *McBride v. Sears, Roebuck & Co.,* 306 Minn. 93, 98, 235 N.W.2d 371, 375 (1975). Malice cannot be implied from the statement itself or from the fact that the statement was false. *Bauer v. State,* 511 N.W.2d 447, 450 (Minn.1994) (citation omitted). Malice can be shown by extrinsic evidence of personal spite, as well as by intrinsic evidence such as "the exaggerated language of the libel, the character of the language used, the mode and extent of publication, and other matters in excess of the privilege." *Frankson v. Design Space Int'l,* 394 N.W.2d 140, 144 (Minn.1986) (quoting *Friedell v. Blakely Printing Co.,* 163 Minn. 226, 231, 203 N.W. 974, 976 (1925)).

■ The language Cole used in her letters does not evince malice. In the letters, Cole related S.P.'s statements, the circumstances in which the statements were made, S.P.'s actions during therapy sessions, S.P.'s

fear of discussing the abuse, S.P.'s emotional problems, Cole's opinion of S.P.'s veracity, and the actions Cole took in response to S.P.'s statements. Cole did not use inflammatory language in the letters. The mode of publication also does not evince malice because Cole distributed the letters only to the appropriate government authorities and to Petron and Petron's attorney. Because neither the character of the language used nor the mode of publication demonstrates malice, we must examine other evidence submitted by Bol to determine whether Cole acted with malice.

The other evidence Bol submitted does not raise any genuine issues of material fact regarding malice. Bol alleges that Cole should not have released the letters to Petron because she knew Petron had a history of mental illness and chemical dependency, was receiving treatment at RMHC, and was involved in a custody dispute with S.P.'s father. The record, however, does not support Bol's assertions that Cole knew about Petron's background when she released the letters to Petron. In her deposition, Cole admitted that "at some point" she learned that Petron was involved in a custody dispute and had been receiving treatment for various problems. It is unclear what Cole knew about Petron when Cole and RMHC released the letters. In any event, Bol's allegations, if true, are insufficient to demonstrate that Cole acted with malice in releasing the letters to Petron. The fact that Petron had previously sought the assistance of a mental health provider and the fact that she was attempting to obtain custody of S.P. do not affect Cole's obligation to inform Petron that her child had stated that he had been sexually abused. It would place an undue burden on a psychologist to require that the psychologist investigate a parent's history and mental state before providing the parent with information regarding the child's diagnosis or treatment. We conclude that all of the evidence in the record, including depositions, affidavits, and exhibits, when viewed in the light most favorable to Bol, is insufficient to create a genuine issue of material fact as to the issue of malice.

V.

If we had determined that the defense of absolute privilege was appropriate based upon Cole and RMHC's release of the letters under the Health Records Act, it would have been necessary to determine whether the letters met the statutory definition of health records and whether the letters were released in compliance with the Health Records Act. We need not reach this issue because Cole and RMHC are not protected by an absolute privilege. However, because the court of appeals held that, as a matter of law, a child abuse report is not a health record under the Health Records Act, we believe it is appropriate to provide some clarification on this point. Insofar as the court of appeals held that a child abuse report can never be a health record, we do not agree.

The issue of whether a child abuse report can be a health record is an issue of first impression before this court. The Health Records Act provides:

(a) Upon request, a provider shall supply to a patient complete and current information possessed by that provider concerning any diagnosis, treatment and prognosis of the patient in terms and language the patient can reasonably be expected to understand.

(b) Upon a patient's written request, a provider, at a reasonable cost to the patient, shall promptly furnish to the patient (1) copies of the patient's health record, including but not limited to laboratory reports, X-rays, prescriptions, and other technical information used in assessing the patient's health condition, or (2) the pertinent portion of the record relating to a condition specified by the patient. With the consent of the patient, the provider may instead furnish only a summary of the record. The provider may exclude from the health record written speculations about the patient's health condition, except that all information necessary for the patient's informed consent must be provided.

Minn.Stat. § 144.335, subd. 2(a)–(b) (1992). A health care provider is required to release information upon written request, unless the provider, prior to the request, had a specific

basis for withholding the information. *Id.* § 144.335, subd. 2(d) (1992). Failure to give proper access may result in disciplinary action. *Id.* § 144.335, subd. 6.

As quoted above, the Health Records Act provides that, when a patient (including a minor patient's parent) so requests, the provider of health care services shall supply the patient with the "complete and current information possessed by [the] provider concerning any diagnosis, treatment and prognosis of the patient * * *." *Id.* § 144.335, subd. 2(a). The patient is entitled to a copy "of the patient's health record." *Id.* § 144.335, subd 2(b). Although the Health Records Act lists examples of some kinds of information that must be provided, such as laboratory reports and X-rays, the list is not exclusive. *Id.* The provider may give the patient a summary of the record if the patient consents. *Id.* The purpose of the statute is to give the patient access to "all information necessary for the patient's informed consent." *See id.*

The Child Abuse Reporting Act provides that child abuse reports, maintained by government agencies, which are subject to the Minnesota Government Data Practices Act, are confidential. Minn.Stat. § 626.556, subd. 7. It does not apply to child abuse reports when they are maintained by private parties. The Health Records Act, on the other hand, clearly governs data maintained by private parties in that it applies to data maintained by health care providers. In addition, the Child Abuse Reporting Act does not appear to have preempted the Health Records Act because the Child Abuse Reporting Act was enacted before the Health Records Act.

The legislature recently added a provision to the Health Records Act, requiring that health care providers "may not release a copy of a videotape of a child victim or alleged victim of physical or sexual abuse without a court order * * *." Minn.Stat. § 144.335, subd. 2(e) (1996). By excluding child abuse videotapes from the health records providers may release, the legislature apparently recognized that providers may release other child abuse data under the Health Records Act. *See Board of Educ. v. Public Sch. Employees' Union Local No. 63*, 233 Minn. 144, 149, 45 N.W.2d 797, 801 (1951)

(holding that "where a statute designates an exception, proviso, saving clause, or a negative, the exclusion of one thing includes all others").

The relevant provisions of the Child Abuse Reporting Act and the Health Records Act do not conflict, nor do they mandate the conclusion that a child abuse report can never be a health record. There may be circumstances in which a child abuse report could be a health record; thus, the court of appeals erred in ruling to the contrary.

Reversed.