Joe KUELBS, Appellant,

v.

Joe WILLIAMS, et al., Respondents,

Suzanne Flolid, et al., Respondents.

No. C6–99–1523.

Court of Appeals of Minnesota.

April 11, 2000.

Review Denied June 27, 2000.

Marc G. Kurzman, Kurzman Grant & Ojala, Minneapolis (for appellant).

Jon K. Iverson, Paul D. Reuvers, Erstad & Reimer, P.A., Minneapolis (for respondents Joe Williams, et al.).

David Wendorf, Wendland Timmerman, Blue Earth (for respondents Suzanne Flolid, et al.).

Considered and decided by WILLIS, Presiding Judge, KALITOWSKI, Judge, and HALBROOKS, Judge.

## OPINION

KALITOWSKI, Judge

Appellant Joe Kuelbs sued respondents City of Savage, Savage police officers Joe Williams and Terrance Gliniany, Scott County, Scott County Human Services Agency, and Scott County social worker Susanne Flolid alleging: (1) bad faith investigation and reporting of child abuse; (2) defamation; and (3) intentional infliction of emotional distress. Appellant challenges the district court's summary judgment in favor of all respondents, arguing the court erred in determining: (1) there is no civil cause of action for bad faith investigation and reporting of child abuse under Minn.Stat. § 626.556; (2) respondents are entitled to official and vicarious official immunity; and (3) the evidence was insufficient as a matter of law to sustain appellant's claim for intentional infliction of emotional distress.

## FACTS

On the morning of May 20, 1998, a construction worker at a neighborhood home called the police to appellant Joe Kuelbs's residence after he heard yelling and saw a boy run from the residence saying "don't hit me anymore."

Two City of Savage police officers, including respondent Terrance Gliniany, responded to the police call. Appellant, his girlfriend C.R., and C.R.'s 11–year–old son M.R. were present at the home when they arrived. The officers stated appellant was visibly upset and confrontational. C.R. told the police that she argued with M.R. and that appellant then intervened and spanked M.R. M.R. said his mom became mad when he missed the bus, they argued, and then appellant became involved. M.R. said appellant struck him with a zippered sweat jacket and with his hand.

After asking M.R. to raise his shirt the officers observed and photographed a fresh abrasion under M.R.'s right arm. C.R. told the police that she caused the abrasion by grabbing M.R. to restrain him. Appellant contends that he confronted the police officers because they had M.R. lift his shirt while outside and refused to move to the garage to avoid a public scene.

The police reported possible abuse of M.R. to Scott County Human Services (SCHS) on May 22, 1998. Respondent Suzanne Flolid, an SCHS social worker, determined that the reports indicated physical abuse had occurred and commenced an assessment. Flolid and respondent City of Savage Police Officer Joe Williams interviewed M.R. at his school on May 22, 1998. M.R. said he did not think what happened was anyone's business but explained that he had been angry at his mom and then appellant got angry and threw his sweat jacket at him, causing the marks. M.R. demonstrated how appellant hit him with the jacket. Flolid and Williams also conducted a taped interview with appellant and C.R. on June 3, 1998, in which C.R. again stated she caused the marks.

After these interviews, Flolid concluded that maltreatment had occurred but that protective services were not needed. She made this determination based on (1) her contact with M.R.; (2) consistent statements by the police; (3) appellant's "escalating conduct"; (4) her opinion that appellant and C.R. were presenting inconsistent statements; and (5) her opinion that M.R.'s marks were more consistent with his explanation than with his mother's explanation. Appellant alleges that Officer Williams told him twice, on unspecified occasions, that the only reason there was a finding of maltreatment was because of appellant's "bad attitude."

Flolid mailed C.R. a letter, dated June 4, 1998, informing C.R. of her determination of maltreatment. The letter said that the assessment indicated appellant "struck [M.R.] repeatedly with a sweatshirt resulting in red scratch marks to the upper right side of [M.R.'s] torso" based on the police reports and the interviews with M.R., C.R., and appellant.

The finding of maltreatment by SCHS was appealed to the Minnesota Department of Human Services. The department reversed the finding of maltreatment after determining the marks on M.R. were more consistent with bumping into something rather than being hit with a jacket.

Following this determination, appellant sued respondents alleging that: (1) all respondents investigated and reported the allegations of child maltreatment in bad faith in violation of Minn.Stat. § 626.556; (2) the Scott County respondents were liable for defamation because Flolid mailed a letter to C.R. that stated appellant repeatedly struck M.R.; and (3) all respondents committed the tort of intentional infliction of emotional distress. Respondents moved for summary judgment arguing: (1) the alleged statutory cause of action did not exist; (2) they were entitled to various immunities and defamation privileges; and (3) appellant's emotional distress claim was insufficient as a matter of law. The district court granted respondents' summary judgment motion on all three claims.

## ISSUES

1. Is there a civil cause of action under Minn.Stat. § 626.556 for bad faith reporting or investigating child maltreatment?

2. Are respondents protected from defamation liability by qualified privilege?

3. Did the district court err in determining that appellant failed to allege extreme and outrageous conduct or severe emotional distress sufficient to maintain an action for intentional infliction of emotional distress?

## ANALYSIS

### I.

■ Appellant claims the district court erred in determining there is no private cause of action for bad faith reporting and investigating child maltreatment under the Reporting of Maltreatment of Minors Act (RMMA), Minn.Stat. § 626.556 (1998 & Supp.1999). This presents a question of statutory interpretation, which is reviewed de novo. *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993).

■ Unless a statute manifests a legislative intent to modify the common law, a statute is presumed not to alter the common law. *Haage v. Steies,* 555 N.W.2d 7, 8 (Minn.App.1996). Courts are precluded from creating a new statutory cause of action that does not exist at common law where the legislature has not provided for civil liability either by the statute's express terms or by implication. *Bruegger v. Faribault County Sheriff's Dep't,* 497 N.W.2d 260, 262 (Minn.1993).

RMMA provides that persons in law enforcement who know or have reason to know a child is being physically abused must immediately report the information to the local welfare agency. Minn.Stat. § 626.556, subd. 3(a)(1). If the report alleges physical abuse by a parent, guardian, or a person in the family unit responsible for the child's care, the local welfare agency must conduct an assessment. Minn.Stat. § 626.556, subd. 10(a). The statute has detailed provisions regarding the investigation process. *See* Minn.Stat. § 626.556, subd. 10.

Appellant argues that there is a civil cause of action for bad faith reporting or investigating based on an immunity provision in the statute. The statute, in relevant part, provides that:

(a) The following persons are immune from any civil or criminal liability that otherwise might result from their actions, if they are acting in good faith:

(1) any person making a voluntary or mandated report under subdivision 3 or under section 626.5561 or assisting in an assessment under this section or under section 626.5561;

(2) any person with responsibility for performing duties under this section or supervisor employed by a local welfare agency * * *.

\* \* \* \*

(b) A person who is a supervisor or person with responsibility for performing duties under this section employed by a local welfare agency or the commissioner complying with subdivisions 10 and 11 or section 626.5561 or any related rule or provision of law is immune from any civil or criminal liability that might otherwise result from the person's actions, if the person is (1) acting in good faith and exercising due care, or (2) acting in good faith and following the information collection procedures established under subdivision 10, paragraphs (h), (i), and (j).

Minn.Stat. § 626.556, subd. 4. Appellant contends that by including this immunity provision the legislature created a private cause of action. We disagree. Had the legislature intended to create a private cause of action for bad faith reporting and investigation of maltreatment, it could have done so explicitly as it did in other sections of this statute. *See* Minn.Stat. § 626.556, subd. 5 (stating that a person who knowingly or recklessly makes a false report "shall be liable in a civil suit").

■ Moreover, Minnesota courts are reluctant to imply a cause of action. *Haage,* 555 N.W.2d at 9. In determining

whether a private cause of action can be implied, this court must consider:

> (1) whether appellant belongs to the class for whose benefit the statute was enacted; (2) whether the legislature indicated an intent to create or deny a remedy; and (3) whether implying a remedy would be consistent with the underlying purpose of the statute.

*Flour Exch. Bldg. Corp. v. State*, 524 N.W.2d 496, 499 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995).

None of these factors support appellant's contention. First, RMMA's legislative statement of public policy does not include appellant among the class of persons RMMA intends to benefit. The statement of public policy provides:

> The legislature hereby declares that the public policy of this state is to protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse. In furtherance of this public policy, it is the intent of the legislature under this section to strengthen the family and make the home, school, and community safe for children * * *.

Minn.Stat. § 626.556, subd. 1. Second, the relevant statutory language does not indicate an intent to create a new cause of action. Although appellant argues that the immunity provision indicates an intent to create a cause of action if persons with duties under RMMA act in bad faith, the immunity provision is by its plain language, intended to *limit* civil or criminal liability. Third, implying a new cause of action is inconsistent with the purpose of the statute. RMMA's purpose of protecting children from maltreatment would not be furthered if the fear of civil liability discouraged persons from candidly reporting findings, conducting necessary investigations, or reaching findings of maltreatment.

We also note that Minnesota courts have been reluctant to recognize private causes of action under reporting acts. *See Hoppe by Dykema v. Kandiyohi Co.*, 543 N.W.2d

635, 638 (Minn.1996) (declining to recognize an implied civil cause of action for negligent delay in conducting an investigation under the Vulnerable Adults Reporting Act); *Valtakis v. Putnam*, 504 N.W.2d 264, 267 (Minn.App.1993) (declining to recognize an implied civil cause of action under RMMA for failure to report suspected child abuse). Appellant attempts to distinguish *Valtakis* on the basis that the immunity provision in RMMA was amended in 1995. But the version of the statute interpreted in *Valtakis* contained a substantially similar immunity provision, including the good faith language upon which appellant relies. *See* Minn.Stat. § 626.556, subd. 4 (1990).

■ As stated in *Valtakis*, we are prohibited from creating causes of action neither expressly nor impliedly recognized by the legislature. 504 N.W.2d at 266. We conclude that there is no express or implied civil cause of action under RMMA for bad faith reporting or investigating child maltreatment.

## II.

■ Appellant contends the district court erred in granting summary judgment on his defamation claim against respondents Flolid, SCHS, and Scott County based on the letter Flolid sent to C.R. These respondents contend they are not liable for defamation because of official and vicarious official immunity or because of a defamation privilege. The district court did not reach the issue of privilege because it concluded respondents were entitled to official immunity and vicarious official immunity. But official immunity does not protect an official against a defamation claim. *Gleason v. Metropolitan Council Transit Operations*, 582 N.W.2d 216, 220 (Minn.1998). Because respondents raised the issue of privilege below and because we may affirm summary judgment on alternative grounds, we address respondents' privilege argument. *See Winkler v. Magnuson*, 539 N.W.2d 821,

827 (Minn.App.1995) (stating that the court of appeals may properly consider an issue raised below and that an appellate court can affirm summary judgment on alternative grounds), *review denied* (Minn. Feb. 13, 1996).

■ The initial determination of whether a statement is privileged is a question of law subject to de novo review. *Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 890 (Minn.1986). Based on the Minnesota Supreme Court's decision in *Bol v. Cole,* 561 N.W.2d 143, 150 (Minn.1997), we conclude respondents are entitled to a qualified privilege.

■ A person who makes a defamatory statement is not liable if a qualified privilege applies and the privilege is not abused. *Bol,* 561 N.W.2d at 149. For a defamatory statement to be protected by a qualified privilege, the statement must be made in good faith, on a proper occasion, from a proper motive, and based on reasonable or probable cause. *Id.* If a defendant is protected by a qualified privilege, the plaintiff has the burden to prove that the privilege was abused because the statements were made with malice. *Id.* at 150. Malice is defined as "actual ill-will or a design causelessly and wantonly to injure a plaintiff." *Id.* (quotation omitted). Malice cannot be implied from the statement itself or from the fact that the statement was false. *Buchanan v. State Dep't of Health,* 573 N.W.2d 733, 738 (Minn.App. 1998), *review denied* (Minn. Apr. 30, 1998). Although malice is generally a question of fact, summary judgment is appropriate if the plaintiff fails to raise a genuine issue of material fact regarding malice. *Bol,* 561 N.W.2d at 150–51.

In *Bol,* the defendant sent a notice of maltreatment to the child's parent. The court determined that the defendant had a qualified privilege for information in the letter and that the plaintiff failed to raise a genuine issue of material fact regarding malice. *Id.* at 150. The court determined that there was no evidence of malice where the language in the letter reporting child abuse to a parent did not evince malice, the mode of publication did not evince malice, and the other evidence submitted was insufficient to create a fact issue. *Id.* at 150–51.

■ Here, the alleged defamatory statement is Flolid's statement in her letter to C.R. that appellant repeatedly struck M.R. Flolid made this statement in a notice of maltreatment, which she is required by law to send to the child's parent. *See* Minn.Stat. § 626.556, subd. 10f (providing that if maltreatment is found, the agency must notify the child's parent and the person determined to be maltreating the child of the finding). Flolid was required to summarize the reasons for her determination in the notice. *See* Minn.Stat. § 626.556, subd. 10f (providing that the notice must include a summary of the specific reasons for the determination).

We conclude that Flolid made the statement in good faith, on a proper occasion, and with proper motivation. She sent the letter to fulfill her statutory duties and to assist in preventing further harm to M.R. Further, Flolid's statement that appellant repeatedly struck M.R. was made based on her interview with M.R., his demonstration of being hit, and her professional opinion that M.R.'s version of the events was the most consistent with his injury. Because the qualified privilege applies, it is appellant's burden to prove that the privilege was abused.

We conclude that appellant has failed to raise a genuine issue of material fact regarding malice. The language in Flolid's letter does not evince malice and the letter was sent to C.R. in accordance with the statute. Appellant alleges that the Savage Police Department had some animus against him based on an incident in 1987. But, even if there was animus, appellant failed to show any connection between the 1987 incident and Scott County's investigation of the alleged child maltreatment. Appellant's sole evidence of malice is the statement by City of Savage Police Officer

Williams that the only reason for the finding of maltreatment was appellant's bad attitude. But there is no evidence that Williams played any role in Scott County's determination that appellant maltreated M.R. Thus, even if true, Officer Williams's statement provides no evidence of malice on the part of Flolid, SCHS, or Scott County, the respondents accused of defamation.

### III.

 To sustain a claim for intentional infliction of emotional distress, a plaintiff must show: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) it caused emotional distress; and (4) the distress was severe. *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 438–39 (Minn.1983). On a claim for intentional infliction of emotional distress, summary judgment is proper if a party does not meet the high standard of proof needed for the claim. *Strauss v. Thorne*, 490 N.W.2d 908, 913 (Minn.App.1992), *review denied* (Minn. Dec. 15, 1992). *See also Hubbard*, 330 N.W.2d at 439 (stating that a plaintiff has a heavy burden of production regarding the severity of the mental distress). It is for the court to determine whether, on the evidence, severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed. *Cafferty v. Garcia's of Scottsdale, Inc.*, 375 N.W.2d 850, 853 (Minn.App.1985). A party resisting summary judgment must do more than rest on mere averments. *DLH Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn.1997).

 Appellant has failed to sustain his heavy burden of producing evidence of severe mental distress. Appellant did not introduce any evidence of any specific symptoms that could constitute severe emotional distress. We conclude that his mere averment is insufficient to withstand a motion for summary judgment, especially considering the high standard required for a claim of intentional infliction of emotional distress.

### DECISION

Because Minn.Stat. § 626.556 (1998 & Supp.1999) neither expressly nor impliedly creates a civil cause of action for bad faith reporting or investigating child maltreatment, appellant failed to state a claim for which relief can be granted. We affirm the district court's grant of summary judgment on appellant's defamation claim because the alleged defamatory statement of Flolid is protected by a qualified privilege and appellant failed to raise a genuine issue of material fact regarding malice. Finally, appellant failed to present evidence sufficient to withstand summary judgment on his claim for intentional infliction of emotional distress.

**Affirmed.**