**Robert Reed CARRADINE, Respondent,**

v.

**STATE of Minnesota, et al.,
Petitioner, Appellants.**

No. C5–92–1070.

Supreme Court of Minnesota.

Feb. 4, 1994.

Hubert H. Humphrey, III, Atty. Gen., Peter M. Ackerberg, Sp. Asst. Atty. Gen., St. Paul, for appellants.

Peter H. Grills, O'Neill, Burke, O'Neill, Leonard & O'Brien, Ltd., St. Paul, for respondent.

Mark R. Anfinson, Lake Calhoun Professional Bldg., Minneapolis, for amicus curiae, MN Newspaper Assoc.

COYNE, Justice.

We agreed to review this case, which has not yet been tried, in order to address whether a state trooper enjoys an absolute privilege that affords him or her absolute immunity from a defamation suit for anything said in preparing an arrest report or in responding to press inquiries about the arrest.[1]

On July 9, 1987, plaintiff, Robert Reed Carradine, was stopped and arrested by a state trooper, defendant Patrick Chase, as he was driving to the airport to catch a flight. In his arrest report and in statements to jail personnel, to prosecutors and to a reporter, Chase said that Carradine's conduct involved speeding, reckless driving, fleeing an officer, and impersonating an officer. . Carradine was booked, finger printed, strip-searched and held in custody for 10 hours before being released. News accounts of Carradine's alleged conduct appeared in newspapers throughout the county and on television because Carradine, in addition to "racing" cars professionally, is an actor who has appeared in a number of movies, the most well-known being "Revenge of the Nerds."

The more serious criminal charges against Carradine were eventually dropped in exchange for his pleading guilty to speeding, a petty misdemeanor.

Carradine then filed suit against Chase and his employer, the State of Minnesota, claiming unreasonable search and seizure, denial of due process, assault and battery, false imprisonment, excessive use of force, negligent infliction of emotional distress, defamation, malicious prosecution, negligence, trespass to personal property, conversion, and vicarious liability.

Defendants moved for summary judgment, claiming official, absolute, sovereign, and qualified immunity.

The trial court granted summary judgment to the defendants on all of Carradine's federal claims and all of his state claims except for three: negligent infliction of emotional distress, defamation and vicarious liability. Defendants appealed from the denial of summary judgment as to those three claims. Carradine noticed review of the award of partial summary judgment.

The court of appeals, in affirming, said, *inter alia,* that Chase lacked an absolute privilege to make defamatory statements in preparing the arrest report and in subsequently talking with the press about the arrest. *Carradine v. State,* 494 N.W.2d 77, 81 (Minn.App.1992).

The history of absolute privilege for defamatory statements made by public officials in the course of duty is "a story of uneven development." *Barr v. Matteo,* 360 U.S. 564, 579, 79 S.Ct. 1335, 1343, 3 L.Ed.2d 1434 (1959) (Warren, C.J., dissenting). Absolute legislative privilege "dates back to at least 1399." *Id.,* citing Van Vechten Veeder, *Absolute Immunity in Defamation: Legislative and Executive Proceedings,* 10 Colum.L.Rev. 131, 132 (1910). "[T]he Constitution itself gives an absolute privilege to members of both Houses of Congress in respect to any speech, debate, vote, report, or action done in session." *Barr v. Matteo,* 360 U.S. at 569, 79 S.Ct. at 1338 (Harlan, J.), citing U.S. Const., Art. I, § 6. Moreover, the privilege is given

---

1. On the appealability of an order denying a motion for summary judgment made by defendants based on a claim of immunity from suit, *see Anderson v. City of Hopkins,* 393 N.W.2d 363 (Minn.1986).

by our state constitution to the legislative branch. Minn. Const., Art. IV, § 10.

Absolute immunity for defamatory statements made by participants in the course of a judicial proceeding dates back at least to the sixteenth century. Van Vechten Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum.L.Rev. 463, 474 (1909). The United States Supreme Court "early held that judges of courts of superior or general authority are absolutely privileged as respects civil suits to recover for actions taken by them in the exercise of their judicial functions, irrespective of the motives with which those acts are alleged to have been performed, *Bradley v. Fisher,* 80 U.S. (13 Wall) 335, 20 L.Ed. 646 and that a like immunity extends to other officers of government whose duties are related to the judicial process. *Yaselli v. Goff,* 12 F.2d 396, *aff'd per curiam,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 involving a Special Assistant to the Attorney General." *Barr v. Matteo,* 360 U.S. at 569, 79 S.Ct. at 1338. For a summary of the cases, *see* Lawrence H. Eldredge, *The Law of Defamation* § 73 (1978).

*Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 is the leading case recognizing absolute privilege in the executive branch. The officer there, Acting Director of the Office of Rent Stabilization, issued a press release announcing his intention to suspend certain employees because of the part they had played in formulating a controversial plan for the use of certain agency funds. The employees sued the Acting Director for libel, alleging malice. The United States Supreme Court, by a split decision, held that the statements in the press release were absolutely privileged.

■ There is now considerable agreement among state courts that "high level" executive officers have absolute immunity from suit for defamatory statements made in the course of their duties. In *Johnson v. Dirkswager,* 315 N.W.2d 215 (Minn.1982), we held, unanimously, that the Commissioner of the Minnesota Department of Public Welfare—who is obviously a high level executive officer—enjoys such immunity.

As we expressly noted in *Dirkswager,* we did "not have before us the nature or extent of any privilege for inferior governmental officers." *Id.* at 221. We are now presented with such a case.

It is no answer to the question whether an executive branch employee has absolute immunity to say that the employee is not a "high level" employee but a "low level" employee. Immunity "is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy." *Barr v. Matteo,* 360 U.S. at 572–73, 79 S.Ct. at 1340.

■ In other words, the purpose of extending absolute immunity to an officer performing a certain governmental function is not primarily to protect the officer personally from civil liability (although that is the effect of absolute immunity). Rather, the rationale is that unless the officer in question is absolutely immune from suit, the officer will timorously, instead of fearlessly, perform the function in question and, as a result, government—that is, the public—will be the ultimate loser. *Barr v. Matteo,* 360 U.S. at 571, 79 S.Ct. at 1339. As stated by Judge Learned Hand:

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the un-

flinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *

The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

*Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

■ Whether an executive officer is absolutely immune from defamation liability depends on many factors, including the nature of the function assigned to the officer and the relationship of the statements to the performance of that function.

The issue in this case, therefore, is not whether police officers have absolute immunity from civil suit for all allegedly defamatory statements made in the performance of their duties. Instead, we address two much more specific issues: (a) whether Trooper Chase has absolute immunity from civil suit for allegedly defamatory statements made in an arrest report; and (b) whether this officer has absolute immunity from civil suit for allegedly defamatory statements made in response to press inquiries about the arrest. We believe that the proper answers are "yes" to the first question and "no, with qualification" to the second.

■ In answering "yes" to the first question, we attach great significance to the following factors: (a) It is a key part of an arresting officer's job to prepare a written arrest report accurately summarizing the circumstances leading to and surrounding the arrest; (b) the report typically is useful not only to the officer's departmental superiors but also to the prosecutor in determining whether to charge the arrestee and, if so, what offense(s) to charge; (c) moreover, the police report often plays a significant role in the trial of a criminal defendant, with the prosecutor using the report to refresh the officer's recollection and with defense counsel using the report to cross-examine and attempt to impeach the officer; and (d) the knowledge that making statements in the report subjects the officer to possible civil liability in a defamation or similar action may well deter the honest officer from fearlessly and vigorously preparing a detailed, accurate report and increase the likelihood that the officer will hesitate to prepare anything more than a bland report that will be less useful within the department and in any subsequent prosecution and trial. To put it another way, instead of preparing a detailed report, the officer will be tempted to leave out certain details, saving those for trial, when any testimony by the officer is absolutely privileged under the judicial privilege. Minnesota has long since taken the position that an accused ought not to be required to face trial by surprise. Minn.R.Crim.P. 9.01. Given these and other factors, we conclude that Trooper Chase has absolute immunity from a civil suit

in defamation for the statements made in the written police report.[2]

■ Whether Chase has absolute immunity from civil suit for allegedly defamatory statements made in response to press inquiries is another matter. An arresting officer's freedom of expression in making an arrest report is essential to the performance of his function as an officer, whereas it is not at all essential to the officer's performance of his duties as an officer that he respond to press inquiries about the circumstances leading up to and surrounding an arrest. *See*, Note, *Developments in the Law—Defamation*, 69 Harv.L.Rev. 875, 920 (1956) (suggesting that the case for granting an absolute privilege to an IRS agent in his or her reports to his or her superior on a taxpayer is strong whereas the case is not strong for granting that same agent the same privilege when the agent's freedom of expression is not essential to the performance of the agent's duty). It appears that there is evidence that statements to the media by state troopers are "allowed" by state patrol policy but that officers are not required to give statements when requested. In fact, there is evidence that state troopers are encouraged to refer questions to a public affairs officer in well-publicized cases. Since we must presume on this record that responding to press inquiries was not one of the officer's duties and because of the greater risk of publication to a large number of people that accompanies the making of public statements about the arrestee, we conclude that not all statements made to the press by an arresting officer such as Trooper Chase are absolutely privileged.

■ To the extent, however, that Chase's statements to the press merely amounted to an exact repetition or a substantial repetition, without amplification or comment, of the statements made in the arrest report, which is a matter of public record available to the press pursuant to Minn.Stat. § 13.82 (1993 Supp.), the statements to the press may not support liability. *Johnson v. Dirkswager*, 315 N.W.2d at 222. Plaintiff Carradine argues that Chase's statements to the press did not merely amount to a substantial repetition of the statements in the arrest report. We believe that the trial court is in a better position at this time than we are to determine whether this is so. If it is so and if a jury properly might find that the additional statements significantly added to any injury sustained by plaintiff over and above any injury sustained as a result of the absolutely privileged statements, then plaintiff should be allowed to proceed to trial against Chase;[3] otherwise, not.

■ The only remaining issue is whether any absolute immunity of the officer also extends to protect the state in its capacity as the officer's employer. We hold that, in this context, the immunity enjoyed by the officer extends to the state. *Pletan v. Gaines*, 494 N.W.2d 38, 41–43 (Minn.1992).

Affirmed in part and reversed in part; remanded to trial court for further proceedings.

PAGE, Justice (dissenting).

I dissent with respect to the disposition of this case. The court articulates the proper standard for qualified privilege in defamation cases and then fails to follow it. The court remands for a determination of whether Trooper Chase acted with actual malice. While I agree that the trial court is generally in a better position to decide factual disputes, here, where the parties have conducted extensive discovery, and where the evidence, when viewed in a light most favorable to Carradine does not establish actual malice, I believe the defamation claim should be dis-

---

**2.** For similar reasons, we conclude that, on the facts as we understand them, Chase also has absolute immunity from civil suit for any other intradepartmental statements he made in the course of his duties.

**3.** Moreover, in order to be entitled to proceed to trial on the basis of any significantly different statements made to the press, plaintiff must first satisfy the trial court that he has evidence to establish actual malice by the officer in the mak-

ing of the statements, because, to the extent statements by the officer are not protected by an absolute privilege, they are protected by a qualified privilege. Plaintiff must therefore establish that he has actual evidence of malice; it is not enough for him to argue that malice may be inferred from the mere making of the statements in question. We also leave this determination to the trial court at this time.

missed. Carradine has had ample opportunity to establish malice, but has failed. This court can, and should, as can and should trial courts, dispose of defamation claims when there are no genuine issues of material fact with respect to the element of actual malice. This claim, on the facts before the court, does not merit the continued expenditure of judicial and party resources.

Finally, there is a need to comment on a point of terminology. A great deal of confusion could be avoided were we to use the term "privilege" in the context of defamation cases and not use the term "immunity." Generally, immunity is from suit, while privilege relates to liability. *See, e.g., Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (discussing absolute immunity under 42 U.S.C. § 1983); *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (discussing privilege); *Restatement (Second) of Torts* § 10 (1965) (same).

TOMLJANOVICH, Justice (dissenting).

I join in the dissent of Justice PAGE.