**REDWOOD COUNTY TELEPHONE CO., Respondent,**

v.

**Jerry LUTTMAN, et al., Appellants.**

No. C9–97–328.

Court of Appeals of Minnesota.

Aug. 12, 1997.

Review Denied Oct. 21, 1997.

Alan M. Anderson, C. Brent Robbins, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for respondent.

Shawn M. Raiter, King & Hatch, P.A., St. Paul, for appellants.

Considered and decided by PARKER, P.J., and CRIPPEN and SHORT, JJ.

## OPINION

PARKER, Judge.

Appellant Jerry Luttman, the Redwood County sheriff, appeals from the district court's denial of his motion for summary judgment. The sheriff contends that absolute privilege protects statements that respondent Redwood County Telephone Company claims were defamatory. The district court ruled that the statements were not absolutely privileged and denied summary judgment. We reverse and remand.

## FACTS

All emergency 911 calls in Redwood County are received through the sheriff's department at the Public Safety Answering Point (PSAP), and emergency services are dispatched by sheriff's department employees. Since 1990, Redwood County has attempted to upgrade its 911 system and replace verbal identification of a caller's location with an enhanced service that automatically identifies the location. Several technical issues have prevented implementation of an enhanced system in Redwood County.

Redwood County is served by three telephone companies. In those areas not served by respondent Redwood County Telephone Company, providers have implemented some enhancements to 911 (E–911) service, including Automatic Number Identification (ANI), similar to caller ID, and an Automatic Line Identification (ALI) system to cross-reference the caller's number with an address. Redwood Telephone had liability concerns and chose not to provide these enhanced services unless the county agreed to indemnify it or until the county upgraded its equipment to eliminate Redwood Telephone's technical concerns.

The county hired a consultant, TND, to evaluate its current system and recommend further enhancements. The consultant's report was completed in October 1994, and the sheriff reviewed it. It recommended:

> TND is of the opinion that installing a 911 system configured such as the existing Redwood County system, is not an acceptable arrangement. Should the open trunk condition [ring-back tone without call getting through to PSAP] ever occur and lives or property lost because the customer's 911 call never got through to the PSAP, the county could be subjected to a liability lawsuit.
>
> TND recommends that Redwood County take action to correct this situation, either by rearranging the existing trunking and

PSAP equipment or by implementing a new enhanced 911 system.

Redwood Telephone alleges that problems implementing E–911 service were caused by the county's system and that it was defamed by the following statements made by the sheriff blaming Redwood Telephone for not providing an enhanced 911 system.[1]

### 1. The April 1994 incident.

The sheriff attended a Redwood County Cities' meeting with 26 city officials present. During the meeting, the sheriff was asked when the county would get E–911, and he responded, "When the telephone company is sold." After the group responded to his remark with laughter, the sheriff said, "I should not have said that."

### 2. The April 17, 1995, letter to Remiger.

In February 1995, a citizen of Redwood County, Jan Remiger, wrote to the sheriff complaining that emergency services were not dispatched in a timely manner in response to her call. In her letter, Remiger complained that the 911 dispatcher required a street address before an ambulance would be sent out. In his response, the sheriff stated that her area "is served by a phone company that will not provide the enhanced '911' service, which means we have no way of knowing where the call is originating from."

### 3. The April 17, 1995, comment to the senior citizens.

At the request of a county commissioner, the sheriff was asked to speak to a group of about 30 senior citizens. Again, the sheriff was asked about the 911 system and he stated that E–911 would not be put in place until a dispute involving Redwood Telephone was resolved. This statement was reprinted in a local newspaper.

---

1. In its complaint, the telephone company relies on only two 1995 incidents for its claim of defamation. Nevertheless, the parties addressed an April 1994 incident at the summary judgment hearing and in their memoranda and arguments to this court. The telephone company briefly and generally alleged that a 1990 comment made by the sheriff was defamatory, but did not offer any specific evidence in support of that incident to resist a motion for summary judgment.

## ISSUE

Were the sheriff's statements protected by an absolute privilege and thus immune from a defamation suit?

## ANALYSIS

◼ In *Johnson v. Dirkswager*, 315 N.W.2d 215 (Minn.1982), the supreme court first recognized that an absolute privilege to make defamatory communications applied to a public executive official. The absolute privilege is

> confined to situations where the public service * * * requires it, keeping in mind that the purpose of the privilege is not so much to protect public officials but to promote the public good, i.e., to keep the public informed of the public's business.

*Id.* at 220. Government is held accountable and the public good is served

> by assuring that its top-level representatives have no excuse not to speak out in the performance of their duties. If they speak out falsely and from ill motives, it is expected that their remarks will be exposed for what they are worth.

*Id.* at 221.

◼ The same absolute privilege recognized for high-level government executive officers in *Dirkswager* was applied to statements made by a state patrol officer in *Carradine v. State*, 511 N.W.2d 733 (Minn.1994). It is not the nature of the office that determines the privilege; instead it is

> the nature of the function assigned to the officer and the relationship of the statements to the performance of that function.

*Carradine*, 511 N.W.2d at 736.

◼ The absolute privilege against defamation claims accorded government officials is a legal concept separate from official or statutory immunity. *Bol v. Cole*, 561 N.W.2d 143, 147 (Minn.1997). Nevertheless, the holder of the absolute privilege is immune from suit for defamation. *Id.* at 148. As a result, the same policy allowing interlocutory appeals based on official and statutory immunity supports an interlocutory appeal from a denial of summary judgment when a government official asserts this absolute privilege. *See Board of Regents v. Reid*, 522 N.W.2d 344, 346 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994).

◼ The district court generally denied the sheriff's claim of immunity based on absolute privilege, ruling that the sheriff

> was not acting pursuant to statutory duty, and it was not an essential or "key" part of his job to communicate to the public that the 911 dilemma would not be solved until [the phone company] was "bought out." Likewise, imposing liability would not deter [the sheriff] from pursuing his job of serving and protecting the citizens of Redwood County.[2]

◼◼ The district court focused on the content of the sheriff's statement; this was error. "The availability of absolute immunity does not depend upon the statement's truth or the speaker's intent." *Diver v. Peterson*, 524 N.W.2d 288, 291 (1994), *review denied* (Minn. Feb. 14, 1995) (citing *Dirkswager*, 315 N.W.2d at 221). Instead, it is the relationship of the statement to a job-related function of the government official that determines the absolute privilege. *Carradine*, 511 N.W.2d at 736. Applying this standard to each of the sheriff's statements, we hold that they were protected by the absolute privilege.

> The sheriff argues that the district court erred by requiring a statutory duty before recognizing an absolute privilege. The district court correctly recognized that the sheriff was not required by statute to make the statements, and no section 592A privilege applied. Nevertheless, the statutory duty privilege is irrelevant to our analysis. The subject of this appeal is the absolute privilege for government officials recognized in *Dirkswager* and section 584 of the Restatement (second) of Torts.

---

**2.** The supreme court recently reviewed the law of absolute privilege in *Bol*, 561 N.W.2d at 143. The privilege applies in two circumstances. First is the absolute privilege for government officials recognized in *Dirkswager*, 315 N.W.2d at 215, and *Carradine*, 511 N.W.2d at 733. A second type of absolute privilege applies to "[o]ne who is required by law to publish defamatory matter." *Bol*, 561 N.W.2d at 148 (quoting Restatement (Second) of Torts § 592A). This privilege "does not require that a publisher of defamatory matter be a government official to be protected by an absolute privilege." *Id.*

The telephone company argues that the county's consultant, TND, was given responsibility for implementing E–911 service, and therefore answering questions about that service was no longer a job function of the sheriff. This analysis of the sheriff's job function is too narrow. The sheriff is the most prominent elected law enforcement official in the county. His office provides dispatch services for emergency 911 calls received from county residents. The provision of emergency services is a matter of great importance to the citizens of Redwood County, as illustrated by the number of inquiries the sheriff received about the service. These questions were directed to the sheriff as the public official charged with providing this important function.

The sheriff's statements were closely related to this important job function. All were made in the performance of his official duties as sheriff. The sheriff attended the two public meetings in his capacity as sheriff to answer questions from the public. His letter response was also made in his capacity as sheriff. All of the statements were responses to constituent inquiries about 911 service, a service provided by the sheriff's department. *Compare Hutchinson v. Proxmire,* 443 U.S. 111, 130, 99 S.Ct. 2675, 2686, 61 L.Ed.2d 411 (1979) (holding privilege did not apply to statements outside of legislative proceedings initiated by the senator and made in press release and newsletter). Applying the absolute privilege in these circumstances will serve the public good by "keep[ing] the public informed of the public's business." *Dirkswager,* 315 N.W.2d at 220. We hold it was error to deny the sheriff's motion for summary judgment on the defamation claim. Inasmuch as Redwood County's purported liability was vicarious, based on the sheriff's statements, it was error to deny the county's motion as well. *See Carradine,* 511 N.W.2d at 737 (immunity enjoyed by officer extends to the state).

## DECISION

The district court erred by denying the sheriff's motion for summary judgment. Ab-solute privilege applies to the statements, and Redwood Telephone's defamation claims against Sheriff Luttman and Redwood County must be dismissed.[3]

**Reversed and remanded.**

---

**3.** In addition to its defamation claims, Redwood Telephone also raised claims for business disparagement based on Minn.Stat. § 325D.44, subd. 1(8) (1996). Neither party briefed the business disparagement claims before this court. Therefore, we must remand to the trial court based on the remaining claims.