2010 ND 155

**Loren J. ZUTZ and Elden J. Elseth, Plaintiffs and Appellants**

v.

**Douglas KAMROWSKI and RoughRider Legal Support Services, Inc., Defendants and Appellees.**

No. 20090392.

Supreme Court of North Dakota.

Aug. 17, 2010.

Rehearing Denied Sept. 21, 2010

Paul A. Sortland, Sortland Law Office, Minneapolis, MN, for plaintiffs and appellants.

Victor Eugene Lund, Mahoney Dougherty & Mahoney, Minneapolis, MN, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1]   Loren J. Zutz and Elden J. Elseth ("plaintiffs") appealed from a district court order dismissing their defamation action against Douglas Kamrowski and RoughRider Legal Support Services, Inc. We affirm, concluding Kamrowski's statements in a report to the Marshall County Attorney are subject to an absolute privilege.

I

[¶ 2]   The plaintiffs, residents of Minnesota, were at all times relevant to this action, appointed board members of the Middle–Snake–Tamarac Rivers Watershed District, a Minnesota governmental entity encompassing land located in five counties in Minnesota with headquarters in Marshall County in Warren, Minnesota.   The plaintiffs claim they raised legitimate and serious concerns about possible financial improprieties in the operation of the Watershed District and they conducted an independent investigation of the Watershed District's bank and payroll records, which led to changes in financial operations by the Watershed District.   The plaintiffs claim their actions were appropriate but resulted in the Marshall County Board of Commissioners asking the Marshall County Attorney "to investigate the situation" and, in turn, the Marshall County Attorney hiring RoughRider, an investigative agency with its office and place of business in Grand Forks, North Dakota, and Kamrowski, an employee of RoughRider and a resident of Grand Forks, to conduct an investigation.   The plaintiffs claim that Kamrowski conducted a biased and unfair investigation, which ultimately established the plaintiffs had done nothing wrong, but that Kamrowski issued a November 19, 2007 two-page report to the Marshall County Attorney, which included defamatory statements about the plaintiffs and which Kamrowski knew would be disseminated to the public and others.   The plaintiffs claim the investigation was not for the purpose of any criminal prosecution and none of their alleged actions constituted malfeasance or nonfeasance requiring their removal from the Watershed District.

[¶ 3]   Kamrowski's November 19 report was in the form of a letter to the Marshall County Attorney, which stated the letter constituted an "Investigator Summary and Comments" and said "the investigation and interviews ... were ... to determine if there was evidence for the Marshall County Attorney to conduct a hearing on any or all of the [Watershed District] Managers

for malfeasance, nonfeasance or misfeasance while serving as a public official."

[¶ 4] The plaintiffs sued RoughRider and Kamrowski in North Dakota state court[1] in February 2009, alleging statements in the November 19, 2007 report constituted defamation, negligent defamation, and defamation per se. The plaintiffs' complaint specifically alleged Kamrowski made the following "false statements, or statements with false implications" in the November 19 report:

a. That the litigation by Loren Zutz with [the Watershed District] ... concerning the PL–566 Project was improper.

b. That it was improper for Zutz to receive copies of employee payroll checks and bank statements from Bremer Bank in Warren without direction from the [Watershed District] Board.

c. Falsely implied that Zutz and Elseth had kept copies of the checks.

d. That it was improper for Elseth to send a letter to the Army Corp of Engineers, asking for a [h]earing on the Aggasiz Valley Water Project without direction from the [Watershed District] Board. The [Watershed District] Board of Managers censored Mr. Elseth for this letter.

e. That it was improper for Elden Elseth to be involved in a dispute by neighbors concerning water line connected to his property.

f. Asserting, without fact, that a certain letter to the Marshall County Commissioners was "based in fact."

g. Falsely implying that Zutz and Elseth were harassing employees.

h. Falsely implying that Zutz and Elseth were improperly bringing up issues before the Watershed District meetings.

The plaintiff's complaint further alleged Kamrowski made the following "false and defamatory conclusions" in the November 19 report:

a. I have found during my interviews that the [Watershed District] Board is on the verge of being dysfunctional or is already there. The managers are getting to the point of being scared to speak and discuss projects because they are in fear of being sued by Mr. Zutz and Mr. Elseth. They already have litigation pending against two other board members. The attorney costs are skyrocketing because of all of the litigation and one wonders where it will stop.

b. I find Mr. Zutz and Mr. Elseth are most certainly on a witch hunt to try to find the smallest of detail anything that could be questioned as wrong doing on behalf of the [Watershed District] managers and employees. They try and do question

---

**1.** The plaintiffs initially sued two members of the Watershed District in Minnesota state court. *See Zutz v. Nelson*, 2009 WL 1752139 (Minn.Ct.App.2009), review granted September 16, 2009, in which the Minnesota Court of Appeals affirmed the dismissal of the plaintiffs' defamation claims against the two other Watershed District managers for statements made at a June 18, 2007 Watershed District meeting.

The plaintiffs also sued the two Watershed District managers, a board administrator, a board employee, RoughRider, and Kamrowski in federal district court, asserting claims under 42 U.S.C. § 1983 and under state law for defamation. The Eighth Circuit Court of Appeals affirmed the dismissal of the plaintiffs' complaint, concluding it failed to state a federal cause of action and the federal district court had discretion to dismiss the state law claims without prejudice. *Zutz v. Nelson*, 601 F.3d 842, 846–50 (8th Cir.2010).

the [Watershed District] attorney Jeff Hane concerning his legal opinion and the legal direction that Mr. Hane gives the managers.

c. During my interview with Don Dietrich [sic], one of the points he brought up was why does the Watershed Board need an attorney present during the [Watershed District] meetings. In light of present and past happenings with Board meetings, it is most certainly the correct direction to go.

[¶ 5] Kamrowski and RoughRider moved to dismiss the plaintiffs' action under N.D.R.Civ.P. 12(b)(vi), claiming the statements in the November 19 report were subject to an absolute privilege. The plaintiffs opposed the motion and submitted an affidavit by Zutz with attached exhibits. Kamrowski and RoughRider responded and submitted an affidavit by Kamrowski. The district court granted the motion to dismiss without specifically stating that it did not consider the affidavits and other materials submitted by the parties. The court decided Minnesota law applied to the plaintiffs' claims and, under Minnesota law, RoughRider and Kamrowski were entitled to an absolute privilege for the November 19 report to the Marshall County Attorney, explaining:

Minnesota law allows for absolute immunity of the communications made by Kamrowski and Roughrider for the purpose of the County Attorney's investigation as well. The report was made at the County Attorney's request for the purpose of his investigation of the alleged illegal and wrongful acts on the part of the Plaintiffs in their duties as Board Members of the Watershed District under the jurisdiction of the Marshall County Attorney. The report at issue was pertinent to the County Attorney's investigation. Absolute immunity

regarding the communications aids the County Attorney in exercising his duties. Public policy favors absolute privilege here so that the County Attorney and his investigators, Kamrowski and Roughrider, would not be deterred from raising issues regarding potentially illegal activity on the part of Plaintiffs in furtherance of the County Attorney's duties.

[¶ 6] The district court further decided the result would have been the same under North Dakota law, because the statements were involved in a proceeding authorized by law and were subject to an absolute privilege under N.D.C.C. § 14–02–05(2).

## II

[¶ 7] The plaintiffs appealed from the order granting the motion to dismiss. Although this record does not reflect that a formal judgment was entered and an order granting dismissal is generally not appealable, we will treat the order as an appealable final order when, as here, the order was obviously intended to be a final judgment. *Van Valkenburg v. Paracelsus Healthcare Corp.*, 2000 ND 38, ¶ 8 n. 1, 606 N.W.2d 908; *Keator v. Gale*, 1997 ND 46, ¶ 5 n. 2, 561 N.W.2d 286.

## III

[¶ 8] If, on a motion to dismiss under N.D.R.Civ.P. 12(b)(vi), matters outside the pleadings are presented to and not excluded by the district court, the motion is treated as a motion for summary judgment under N.D.R.Civ.P. 56. *Livingood v. Meece*, 477 N.W.2d 183, 187 (N.D. 1991). Here, the plaintiffs submitted an affidavit by Zutz with attached exhibits in response to the motion to dismiss under N.D.R.Civ.P. 12(b)(vi). The district court did not specifically exclude those materials. We therefore review the district court's decision under N.D.R.Civ.P. 56, which is a

procedural device for promptly resolving an action on the merits without a trial if there are no genuine issues of material fact or inferences that reasonably can be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *In re Estate of Dionne*, 2009 ND 172, ¶ 8, 772 N.W.2d 891.

## IV

[¶ 9] During oral argument to this Court, the parties conceded that under the relevant factors for deciding a choice-of-law issue, Minnesota law governs the plaintiffs' claims. *See Nodak Mut. Ins. Co. v. Wamsley*, 2004 ND 174, ¶ 13, 687 N.W.2d 226 (describing test for deciding choice-of-law questions); *Daley v. American States Preferred Ins. Co.*, 1998 ND 225, ¶¶ 10–12, 587 N.W.2d 159 (same). We agree with the parties that Minnesota has the most significant interests with the issues in this case, and we therefore consider the parties' arguments under Minnesota law for defamation.

[¶ 10] The plaintiffs claim the district court erred in making factual findings in granting the motion to dismiss, and we consider that claim in the context of summary judgment and the plaintiffs' argument that the Marshall County Attorney's contract investigator does not have absolute immunity for defamatory statements made in an investigation. Relying on *Erickson v. County of Clay*, 451 N.W.2d 666, 671–72 (Minn.Ct.App.1990), the plaintiffs argue Kamrowski's report was not absolutely privileged because Kamrowski and RoughRider are not public employees and there was no criminal investigation involved in this case. Kamrowski and RoughRider respond that the circumstances of the November 19 report subject the statements in that report to an absolute privilege under the rationale of *Carra-*

*dine v. State*, 511 N.W.2d 733, 735–37 (Minn.1994).

■■■ [¶ 11] Under Minnesota law, "one is liable for an unprivileged communication or publication of false and defamatory matter which injures the reputation of another." *Matthis v. Kennedy*, 243 Minn. 219, 67 N.W.2d 413, 416 (1954). "For a statement to be defamatory, it must be false, it must be communicated to another, and it must tend to harm the plaintiff's reputation." *Bol v. Cole*, 561 N.W.2d 143, 146 (Minn.1997). If a plaintiff establishes a prima facie case of defamation, the defendant may raise the defense of privilege. *Bol*, at 147–48.

■■ [¶ 12] Minnesota law divides privilege into two general classes: (a) absolute privilege, and (2) qualified or conditional privilege. *Matthis*, 67 N.W.2d at 416. "Absolute privilege means that immunity is given even for intentionally false statements, coupled with malice, while a qualified or conditional privilege grants immunity only if the privilege is not abused and defamatory statements are publicized in good faith and without malice." *Id.* In *Bol*, 561 N.W.2d at 148 (quoting Restatement (Second) of Torts § 584, Introductory Note, at 243 (1977)), the Minnesota Supreme Court explained the purpose of an absolute privilege:

"[A]bsolute privileges" are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil

proceedings brought against them for misconduct in their position. Therefore the privilege, or immunity, is absolute and the protection that it affords is complete.

[¶ 13] Minnesota law recognizes that the existence of an absolute privilege is a matter of public policy for situations in which the function of a public official and the occasion of the communication require complete immunity from liability for false and defamatory language to protect important public interests and the public welfare. *Bol,* 561 N.W.2d at 149; *Carradine,* 511 N.W.2d at 735; *Johnson v. Dirkswager,* 315 N.W.2d 215, 220 (Minn.1982); *Matthis,* 67 N.W.2d at 417. However, the Minnesota Supreme Court has recognized "that the doctrine of absolute privilege should be 'confined within narrow limits.'" *Bol,* at 149 (quoting *Matthis,* at 417). "For absolute privilege to apply, the public interest served must be one of paramount importance, such that it is entitled to protection even at the expense of failing to compensate harm to the defamed person's reputation." *Bol,* at 149.

[¶ 14] In *Bol,* the Minnesota Supreme Court considered a defamation claim by an alleged child abuser against a psychologist after the psychologist sent child abuse reports identifying the alleged abuser to the child's mother. 561 N.W.2d at 145. The court concluded the public interest in protecting the psychologist from a lawsuit by an allegedly defamed party was not sufficiently strong to prohibit courts from inquiring into the psychologist's motives in publishing alleged defamatory statements to the patient's mother. *Id.* at 149. The court recognized the psychologist was not a public official and held the psychologist was not entitled to an absolute privilege for an alleged defamatory statement about a third party contained in a child abuse report in a child's medical records, which was disclosed to the child's parent. *Id.* at 148–49. The court concluded, however, the psychologist's communication to the parent was protected by a qualified privilege and the allegedly defamed person failed to raise a genuine issue of fact that the communication was made with malice. *Id.* at 149–51.

[¶ 15] In *Carradine,* the Minnesota Supreme Court considered an arrestee's defamation claim against an arresting officer for statements made in a police report and for statements made to the news media. 511 N.W.2d at 734. The court discussed the underlying rationale for an absolute privilege in the context of the ultimate effectiveness of a government function and explained that unless public officials are absolutely immune from suit while performing certain functions, the official "will timorously, instead of fearlessly, perform th[ose] function[s] . . . and, as a result, government—that is, the public—will be the ultimate loser." *Id.* at 735. The court held that statements by a "low level" executive employee, a state trooper, in a police report about an arrestee were absolutely privileged, while statements made by the state trooper to the press were subject to a qualified privilege. *Id.* at 735–37. In distinguishing the two statements, the court identified several factors for consideration, including the nature of the function assigned to the trooper and the relationship of the statements to the performance of that function. *Id.* In concluding the statements in the arrest report were subject to an absolute privilege and the statements to the press were subject to a qualified privilege, the court explained:

> [W]e attach great significance to the following factors: (a) It is a key part of an arresting officer's job to prepare a written arrest report accurately summarizing the circumstances leading to and

surrounding the arrest; (b) the report typically is useful not only to the officer's departmental superiors but also to the prosecutor in determining whether to charge the arrestee and, if so, what offense(s) to charge; (c) moreover, the police report often plays a significant role in the trial of a criminal defendant, with the prosecutor using the report to refresh the officer's recollection and with defense counsel using the report to cross-examine and attempt to impeach the officer; and (d) the knowledge that making statements in the report subjects the officer to possible civil liability in a defamation or similar action may well deter the honest officer from fearlessly and vigorously preparing a detailed, accurate report and increase the likelihood that the officer will hesitate to prepare anything more than a bland report that will be less useful within the department and in any subsequent prosecution and trial. To put it another way, instead of preparing a detailed report, the officer will be tempted to leave out certain details, saving those for trial, when any testimony by the officer is absolutely privileged under the judicial privilege. Minnesota has long since taken the position that an accused ought not to be required to face trial by surprise.... Given these and other factors, we conclude that Trooper Chase has absolute immunity from a civil suit in defamation for the statements made in the written police report.

Whether Chase has absolute immunity from civil suit for allegedly defamatory statements made in response to press inquiries is another matter. An arresting officer's freedom of expression in making an arrest report is essential to the performance of his function as an officer, whereas it is not at all essential to the officer's performance of his duties as an officer that he respond to press inquiries about the circumstances leading up to and surrounding an arrest. *See,* Note, *Developments in the Law— Defamation,* 69 Harv.L.Rev. 875, 920 (1956) (suggesting that the case for granting an absolute privilege to an IRS agent in his or her reports to his or her superior on a taxpayer is strong whereas the case is not strong for granting that same agent the same privilege when the agent's freedom of expression is not essential to the performance of the agent's duty). It appears that there is evidence that statements to the media by state troopers are "allowed" by state patrol policy but that officers are not required to give statements when requested. In fact, there is evidence that state troopers are encouraged to refer questions to a public affairs officer in well-publicized cases. Since we must presume on this record that responding to press inquiries was not one of the officer's duties and because of the greater risk of publication to a large number of people that accompanies the making of public statements about the arrestee, we conclude that not all statements made to the press by an arresting officer such as Trooper Chase are absolutely privileged.

*Carradine,* at 736–37 (footnote omitted).

[¶ 16] In *Erickson,* the Minnesota Court of Appeals considered a city manager's defamation claim against a county attorney, an assistant county attorney, and an investigator in the county sheriff's office for alleged false and defamatory statements to the press and to private individuals. 451 N.W.2d at 671. The Minnesota Court of Appeals did not consider any issue about the potential applicability of absolute privilege as it related to the alleged false and defamatory statements to the press and to private individuals; instead, the court of appeals decided that the city manager's claims were sufficient to

survive a motion to dismiss under Minn. R.Civ.P. 12 and that issues of qualified immunity must be decided by the trial court in further proceedings. *Erickson*, at 671–72.

[¶ 17] The decision of the Minnesota Court of Appeals in *Erickson* does not involve statements in an official report and is consistent with the subsequent decision by the Minnesota Supreme Court in *Carradine* regarding alleged defamatory statements by a public official to the press or other individuals. However, neither *Carradine* nor *Erickson* involved statements by a contract investigator in a report to a county attorney regarding an investigation.

[¶ 18] Under Minnesota law, the Marshall County Attorney is a public official whose duties include giving "opinions and advice, upon the request of the county board or any county officer, upon all matters in which the county is or may be interested, or in relation to the official duties of the board or officer." Minn.Stat. § 388.051(1)(b). In Minnesota, a watershed district is a governmental entity initially established by a petition to the Minnesota Board of Water and Soil Resources by local entities or persons from within the proposed watershed district. *See* Minn.Stat. ch. 103D. Under Minnesota law, counties affected by a watershed district provide funding for watershed district projects. Minn.Stat. § 103D.901(2). The appropriate county commissioners appoint managers for watershed districts. Minn.Stat. §§ 103D.301 and 311.

[¶ 19] The plaintiffs' complaint alleges the Marshall County Attorney received a request from the Marshall County Board of Commissioners to investigate the Watershed District. Responding to a request from a county board is part of a county attorney's statutory duties under Minn.Stat. § 388.051(1)(b). The Marshall County Attorney has statutory authority to prosecute criminal charges and the necessary authority to investigate whether criminal charges are appropriate, or whether other malfeasance may have occurred. *See* Minn.Stat. § 388.051(1)(c).

[¶ 20] Kamrowski's November 19 report was in response to a request by the Marshall County Attorney seeking information in the context of the official function of the office to advise the Marshall County Board of Commissioners. There is little doubt that if the Marshall County Attorney had done the investigation and made the report, the statements in the report would be absolutely privileged. Kamrowski's report was an integral part of providing information to the Marshall County Attorney so he could provide advice to the Marshall County Board of Commissioners. As in *Carradine*, 511 N.W.2d at 736, the possibility of civil liability for defamation would deter an honest contract investigator from "fearlessly and vigorously preparing a detailed, accurate report and increase the likelihood that the officer will hesitate to prepare anything more than a bland report." Although Kamrowski was a contract investigator and not a government employee, the underlying public function and interest in this case is served by candid disclosures in the report and is the same as the public function and interest underlying the police report in *Carradine*.

[¶ 21] We conclude statements in the contract investigator's report to the Marshall County Attorney were part of the function of the Marshall County Attorney and were subject to an absolute privilege under the rationale applicable to the police report in *Carradine*. We hold the plaintiffs' allegations regarding alleged defamatory statements in Kamrowski's report are subject to an absolute privilege under Minnesota law for defamation. We there-

fore conclude that Kamrowski and Rough-Rider have absolute immunity from a civil defamation suit for statements made in the November 19 report.

### V

[¶ 22] We affirm the order dismissing the plaintiffs' action.

[¶ 23] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.