The **BOARD OF REGENTS OF THE UNIVERSITY OF MINNESOTA,** Appellant,

v.

**Kenneth J. REID, Respondent,**

**Jozef K. Tylko, Respondent,**

**Plasma Holdings N.V., et al., Defendants,**

and

**Jozef K. TYLKO, third party plaintiff, Respondent,**

v.

**Tony POTAMI, et al., third party defendants, Appellants.**

No. C6–93–2397.

Court of Appeals of Minnesota.

Sept. 30, 1994.

Review Denied Oct. 27, 1994 *.

* Page and Anderson, JJ., took no part in the consideration or decision of this case.

Thomas Tinkham, Leslie J. Anderson, Creighton R. Magid, Dorsey & Whitney, Minneapolis, for appellants.

Thomas F. Cross, Jr., Steven E. Ness, Jennifer A. Beckman, Henretta, Cross, Ness & Dolan, Minnetonka, for Kenneth J. Reid.

James T. Martin, Gislason, Martin & Varpness, Minneapolis, for Jozef K. Tylko.

Considered and decided by ANDERSON, P.J., and KLAPHAKE and HOLTAN, JJ.*

## OPINION

ANDERSON, Judge.

The district court denied a motion for summary judgment by appellants Board of Regents of the University of Minnesota, Tony Potami, Mark Rotenberg, Ettore Infante, and Patrick Spellacy on claims against them for defamation, misrepresentation, and violation of the Minnesota Data Practices Act. We reverse and remand.

## FACTS

Respondent Kenneth J. Reid, a tenured professor, was head of the University Mineral Resources Research Center (MRRC) from 1977 until it closed in 1991. At Reid's suggestion, respondent Jozef K. Tylko became a visiting professor with the MRRC in 1978.

In 1991, prompted by a budget deficit at the MRRC and by allegations that MRRC

---

* Serving as judge of the Minnesota Court of Appeals by appointment of the Minnesota Supreme Court pursuant to an order dated September 23, 1994, and filed September 23, 1994.

personnel had violated University policies, the Dean of the University's Institute of Technology appointed a faculty committee to examine MRRC operations. As a result of the committee's findings, the University's Department of Audits initiated its own investigation.

Based on the Department of Audits' investigation, the University believed that Tylko and Reid had wrongfully retained control of technology that they had developed while working for the University instead of assigning the technology to the University. Tylko and Reid claim that the investigation results, compiled in the form of an audit, are factually inaccurate.

On October 26, 1992, the University filed suit against Tylko and Reid. That same day, the University held a press briefing at which it distributed copies of its complaint against them. The briefing was conducted by Infante, the University's Senior Vice President for Academic Affairs; Rotenberg, the University's General Counsel; and Spellacy, the University's Director of Audits. Potami, the University's Associate Vice President for Research and Technology Transfer, responded to follow-up telephone inquiries from the press. The University also released a redacted report of the audit it had prepared.

The remarks by Infante, Rotenberg, Spellacy, and Potami (administrators) suggested that Tylko and Reid committed civil and criminal fraud while at the MRRC. Tylko and Reid then sued the administrators and the Board of Regents of the University of Minnesota (University) for, among other things, defamation, fraudulent inducement to move to Minnesota for work, and violation of the Minnesota Data Practices Act. Appellants moved for summary judgment, alleging that they had absolute immunity. The district court denied the motion and this appeal followed.

## ISSUES

I. Did the district court err by concluding that appellants did not have absolute immunity?

II. Did the district court err by denying appellants' motion for summary judgment on

respondents' claims under the Minnesota Data Practices Act?

## ANALYSIS

### I.

The holder of an absolute privilege has absolute immunity from suit for defamation. *See Carradine v. State*, 511 N.W.2d 733, 735 (Minn.1994); *see also* Restatement (Second) of Torts Topic 2. Absolute Privileges, Title B, introductory note (1976) (what traditionally has been called "absolute privilege" is actually an immunity). The rationale underpinning absolute immunity is that the common good is promoted by allowing government officials to fearlessly provide and discuss information that concerns the public interest. *Carradine*, 511 N.W.2d at 735. One of the ways in which this interest is served is by protecting officials from litigation and its attendant inhibiting effects. *Id.* at 733. Thus, interlocutory review is available when a defendant's motion for summary judgment on the basis of absolute immunity is denied. *See McGovern v. City of Minneapolis*, 475 N.W.2d 71, 72–73 (Minn.1991) (denial of discretionary or official immunity is immediately appealable). On appeal, we need not defer to the district court's conclusions of law regarding the existence of absolute immunity. *LeBaron v. State*, 499 N.W.2d 39, 41 (Minn.App.1993), *pet. for rev. denied* (Minn. June 9, 1993).

The University and the administrators first contend that they have absolute immunity from suit for defamation. We agree.

Established in 1851 by virtue of territorial act and perpetuated by our state constitution in 1857, the University is a constitutional arm of Minnesota state government. *Winberg v. University of Minn.*, 499 N.W.2d 799, 801–02 (Minn.1993); *see also State ex rel. Univ. of Minn. v. Chase*, 175 Minn. 259, 263, 220 N.W. 951, 952 (1928) (University is functionally an instrumentality or agency of state government). The University, however, occupies a unique position. Its governing body, the Board of Regents, is generally free of legislative, executive, or judicial interference as long as it properly executes its duties. *Winberg*, 499 N.W.2d at 801 (Board's

powers not subject to legislative or executive control); *Bailey v. University of Minn.*, 290 Minn. 359, 360–61, 187 N.W.2d 702, 704 (1971) (substantial judicial deference is given to the Board's decisions).

While the University's status under the constitution exempts it from some laws applicable to other state agencies, it may nonetheless be subject to a number of the legal obligations unique to governmental bodies. *See Winberg*, 499 N.W.2d at 801 (legislature may expressly include University in list of public institutions subject to a particular statute). The University also benefits from a number of the legal protections unique to governmental bodies. This is recognized by the language used to perpetuate the University's powers in the state constitution: "All the rights, *immunities*, franchises and endowments heretofore granted or conferred are hereby perpetuated unto the said university." Minn. Const. art. VIII, § 4 (1857) (emphasis added) (current version at Minn. Const. art. XIII, § 3).

■ Historically, this meant that the University shared the sovereign immunity extended to the rest of state government. *See Miller v. Chou*, 257 N.W.2d 277, 278–81 (Minn.1977). Following the supreme court's abolition of the sovereign immunity doctrine in 1975,[1] the Minnesota Legislature specifically included the University within the definition of "state" for purposes of statutory immunity. Minn.Stat. § 3.732, subd. 1(1) (1992). In essence, the University stands on equal footing with other arms of state government when it comes to immunity from suit. Thus, we conclude that, in appropriate circumstances, the University and its officials are absolutely immune from suit for defamation.

The question remains whether the University and the administrators have absolute immunity in this case. The powers exercised by University officers ordinarily are executive in nature. *Chase*, 175 Minn. at 267, 220 N.W. at 954 (distinction between jurisdiction of Board of Regents and that of legislature is generally that between executive and legislative power). Hence, we must consider whether the absolute immunity available to executive officers applies to the facts before us. *Cf. Carradine*, 511 N.W.2d at 734–35 (distinguishing judicial, legislative, and executive absolute immunities).

■ The availability of absolute immunity to an executive official in defamation suits does not depend on the truth or falsity of the statement or the nature or intent of the speaker. *Johnson v. Dirkswager*, 315 N.W.2d 215, 220–21 (Minn.1982). Nor does it depend on an official's rank within the bureaucratic hierarchy. *Carradine*, 511 N.W.2d at 735. Rather, it depends on a number of factors, including the official's assigned functions, whether the statements made were integral to performing those functions, and the public interest furthered by allowing the official to speak freely about the statement's subject matter. *Id.* at 736; *Dirkswager*, 315 N.W.2d at 221.

■ Here, the uncontroverted evidence shows that the University designated Infante, Rotenberg, and Spellacy as spokespersons at the October 1992 press briefing. It is also undisputed that Potami's job responsibilities involve communicating to the public about the University's patent and technology policies, the subjects at the core of the University's dispute with Tylko and Reid. In short, there is no question that the administrators' assigned functions were to communicate with the press, and the statements made regarding Tylko and Reid were integral to performing their assigned functions. *Compare Dirkswager*, 315 N.W.2d at 221 (Commissioner of Public Welfare acting within ambit of duties by talking with reporter) *with Carradine*, 511 N.W.2d at 737 (presuming that answering press inquiries was not within state trooper's duties). Furthermore, the administrators' remarks to the press focused on an issue of critical public concern, the alleged misuse of public money and resources. Accordingly, we hold that the administrators have absolute immunity covering the statements attributed to them by Tylko and Reid and the release of the audit to the public. Because the University also has absolute immunity, the district court

---

1. *Nieting v. Blondell,* 306 Minn. 122, 235 N.W.2d 597 (1975).

erred by denying summary judgment. *Carradine*, 511 N.W.2d at 737 (absolute immunity of state trooper extended to protect the state in its capacity as the trooper's employer).

We recognize that absolute immunity demands a sensitive balancing of the public's right to know against a defamed individual's right to seek compensation. *Dirkswager*, 315 N.W.2d at 221. We conclude that this instance is one in which the public's right to know weighs more heavily. In so holding, we emphasize that absolute immunity precludes Tylko and Reid only from seeking damages for defamation.

## II.

The University also contends that the district court erred by denying its summary judgment motion on Tylko's claim that it falsely induced him to enter employment. *See* Minn.Stat. §§ 181.64 (unlawful to falsely induce person to enter employment) and 181.65 (right of action for false inducement) (1978). In addition, the University alleges that the court erred by denying its summary judgment motion on Reid's claim that the University violated certain provisions of the Minnesota Data Practices Act. Minn.Stat. §§ 13.01–.99 (1992).

▉ Generally, we will not resolve issues that do not involve immunity on appeal from a denial of a summary judgment motion. *See, e.g., Boop v. City of Lino Lakes*, 502 N.W.2d 409, 411 (Minn.App.1993), *pet. for rev. denied* (Minn. Sept. 10, 1993); *Masonick v. J.P. Homes, Inc.*, 494 N.W.2d 910, 913 (Minn.App.1993). Interlocutory review may be available, however, if the issues have been thoroughly briefed, review would eliminate the need for a trial, and the issues can be resolved as a matter of law. *Rasivong v. Lakewood Community College*, 504 N.W.2d 778, 783 (Minn.App.1993), *pet. for rev. denied* (Minn. Oct. 19, 1993). The parties have addressed issues pertaining to Tylko's claim that the University fraudulently induced him to enter employment and Reid's claim that the University violated the Data Practices Act. Nevertheless, we decline interlocutory review of these issues.

First, other litigation is pending among the parties concerning claims not presently before this court; that litigation will require a trial regardless of whether we extend review to Tylko's and Reid's claims.

Second, the remaining issues require additional procedural or factual determinations by the district court. The court did not address the University's argument that the statute of limitations barred Tylko's claim. *See* Minn.Stat. § 181.64. A statute of limitations defense will not be considered on review if the district court did not rule on the issue. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Given that this threshold issue has not yet been resolved, we cannot consider whether there are fact issues that would otherwise preclude summary judgment. *Cf. Hanks v. Hubbard Broadcasting, Inc.*, 493 N.W.2d 302, 309–10 (Minn.App.1992) (whether elements of fraudulent inducement to begin employment claim have been met is usually fact question), *pet. for rev. denied* (Minn. Feb. 12, 1993). On remand, the district court should determine which statute of limitations is applicable in this situation and whether the appropriate statute bars Tylko's claim. *Compare* Minn.Stat. § 541.05, subd. 1(6) (1992) (fraud claims are governed by six-year statute of limitations) *with Stowman v. Carlson Cos.*, 430 N.W.2d 490, 493 (Minn.App. 1988) (fraudulent inducement to begin employment claim governed by two-year statute of limitations), *pet. for rev. denied* (Minn. Jan. 13, 1989).

We are similarly unable to grant review on Reid's claim regarding alleged violations of the Data Practices Act. *See Rasivong*, 504 N.W.2d at 783. We offer no opinion as to the potential merits of a future summary judgment motion on this claim.

## III.

Because absolute immunity bars Reid and Tylko's defamation claims, we need not address the University's arguments concerning qualified privilege and discretionary immunity. We note that the University concedes that its reliance on official immunity is no longer justified. *Bauer v. State*, 511 N.W.2d 447, 448–50 (Minn.1994) (official immunity does not apply to defamation claims).

## DECISION

The University and the administrators have absolute immunity for making the statements that allegedly defamed Tylko and Reid and for releasing the audit. Interlocutory review of the other claims made by Tylko and Reid is unavailable.

**Reversed and remanded.**