Amy J. **BUCHANAN**, et al., Appellants,

v.

**MINNESOTA STATE DEPARTMENT OF HEALTH, et al.,**
Respondents.

No. C8-97-1499.

Court of Appeals of Minnesota.

Feb. 24, 1998.

Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, for appellants.

Hubert H. Humphrey III, Attorney General, James S. Alexander, Assistant Attorney General, St. Paul, for respondents.

Considered and decided by RANDALL, P.J., TOUSSAINT, C.J., and HOLTAN, J.*

## OPINION

RANDALL, Judge.

Appellants challenge the district court's summary judgment award to respondents on appellants' suit for defamation arising from statements made to the media by an employee of the Minnesota Department of Health. We affirm.

## FACTS

Appellant Health Personnel (Personnel) began providing home health care services in northern Minnesota in 1979. Appellant Gerald Buchanan founded the business and in 1992 sold it to his daughter, appellant Amy Buchanan.

Personnel, previously a registered home care provider, received a provisional home care provider license in 1993 from the Minnesota Department of Health (MDH). Because Personnel had lost its Medicare certification and because MDH had received complaints about Personnel, MDH conducted a survey of Personnel in October 1993. Following the survey, MDH issued 26 correction orders to Personnel for violating home care rules. After another survey of Personnel in January 1994, MDH issued 11 penalty assessments, totaling $3,100, for failure to correct the previous cited violations and issued 13 new correction orders. MDH conducted a third survey of Personnel in November 1994 and issued eight penalty assessments, totaling $5,200, for repeat violations as cited in the October 1993 and January 1994 surveys and assessed an additional $500 in fines for uncorrected violations from the January 1994 survey. Thirteen new correction orders were also issued in November 1994.

On November 30, 1994, MDH informed Personnel that it would not renew Personnel's home care license after its expiration in February 1995. The cited reasons for nonrenewal included violations of the licensing standards, penalty assessments, and failure to submit required documentation. Personnel appealed MDH's assessments and refusal to renew its license to an Administrative Law Judge. The ALJ recommended approving the assessments and the nonrenewal of Personnel's license, and the Commissioner of Health (Commissioner) affirmed this recommendation in relevant part. Personnel requested a stay from the Commissioner and this court; both denied the request. MDH ordered Personnel to cease providing home care services under its license as of December 15, 1996. Personnel appealed the Commissioner's order imposing assessments and denying its license renewal, and this court affirmed. *In re Assessment & Denial of Renewal of License Issued to Health Personnel/Silver Lining Assisted Lifestyle*, No. C4-96-2056, 1997 WL 118126 (Minn.App. Mar.18, 1997).

While the licensing case was pending before the ALJ, the Duluth New–Tribune published an article on March 19, 1995 entitled "Violating Trust? 1 Firm's Tale." The article discussed Personnel and the actions taken against it by MDH. The article referenced the comments of respondent Mary Absolon, an MDH employee:

> Absolon said this case is different only because of the company's reaction: Steadfast refusal to correct most of the problems cited.

The author of the article, John Myers, stated in his affidavit that this accurately paraphrased Absolon's comments to him.

Appellants brought an action in district court claiming this statement was defamatory. Respondents moved for summary judgment, and the district court granted this motion, finding that appellants' defamation claim was barred by both absolute and qualified privilege.

## ISSUES

Did the district court err in finding that a Minnesota Department of Health employee had an absolute privilege to make statements to the press?

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Did the district court err in finding that a Minnesota Department of Health employee had a qualified privilege to make statements to the press?

## ANALYSIS

On appeal from summary judgment, a reviewing court must consider whether there are genuine issues of material fact and whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). This court must view the evidence in the light most favorable to the party against whom the district court awarded summary judgment. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993).

There are two types of defamation privileges: absolute privilege and qualified or conditional privilege. *Matthis v. Kennedy*, 243 Minn. 219, 223, 67 N.W.2d 413, 416 (1954). "The existence of privilege is a question of law for the court." *LeBaron v. Minnesota Bd. of Pub. Defense*, 499 N.W.2d 39, 41 (Minn.App.1993), *review denied* (Minn. June 9, 1993).

### I.

Under absolute privilege, immunity is granted even for intentionally false and malicious statements. *Matthis*, 243 Minn. at 223, 67 N.W.2d at 416. The privilege is determined by the occasion on which the defamation was communicated. *Id.* at 223, 67 N.W.2d at 417. The purpose of an absolute privilege is to promote the public good by keeping "the public informed of the public's business," and its application "should be confined to situations where the public service or the administration of justice requires it." *Johnson v. Dirkswager*, 315 N.W.2d 215, 220 (Minn.1982).

It is settled that high-level executive officers are absolutely immune from suit for defamatory statements made during the course of their duties. *Carradine v. State*, 511 N.W.2d 733, 735 (Minn.1994); *see also Dirkswager*, 315 N.W.2d at 223 (holding that Minnesota Department of Public Welfare Commissioner has absolute privilege). This court has recently recognized that an official's rank within the bureaucratic hierarchy is not determinative of whether absolute immunity is available in defamation suits. *Board of Regents v. Reid*, 522 N.W.2d 344, 347 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994).

Immunity "is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy."

*Carradine*, 511 N.W.2d at 735 (quoting *Barr v. Matteo*, 360 U.S. 564, 572–73, 79 S.Ct. 1335, 1340, 3 L.Ed.2d 1434 (1959)). The availability of immunity depends instead on several factors, including

the official's assigned functions, whether the statements made were integral to performing those functions, and the public interest furthered by allowing the official to speak freely about the statement's subject matter.

*Reid*, 522 N.W.2d at 347; *see also Carradine*, 511 N.W.2d at 736 (stating absolute immunity from defamation liability is dependent on numerous factors, including type of function assigned and statement's relationship to performance of that function); *Redwood County Tel. Co. v. Luttman*, 567 N.W.2d 717, 720 (Minn.App.1997) ("It is the relationship of the statement to a job-related function of the government official that determines the absolute privilege."), *review denied* (Minn. Oct. 21, 1997).

The supreme court has held that a police officer has absolute immunity for statements made in an arrest report because it is "essential to the performance of his function as an officer." *Carradine*, 511 N.W.2d at 737. The supreme court refused to grant absolute immunity for a police officer's responses to press inquiries, where they were not essential to the officer's duties. But, the officer's statements would be protected if they were a

recitation of information in the arrest report. *Id.*

In *Reid,* this court determined that an absolute privilege applied where university officials gave a press briefing and talked with the press via telephone regarding an alleged commission of civil and criminal fraud by professors. 522 N.W.2d at 346–47. There, this court determined that communicating to the press was an assigned function of these officials and making the statements about the professors was essential to their assigned duties. *Id.* at 347. Finally, this court noted that "the administrators' remarks to the press focused on an issue of critical public concern." *Id.*

■ Here, at the time Absolon spoke to the press she was employed as Program Manager for MDH's Licensing and Certification Section. Her responsibilities included supervising the licensure and inspection of home health care providers. She also participated in the development and adoption of the licensing rule, supervised MDH surveyors who implemented the rule, and reviewed and signed correction orders for home care agencies. Further, she was present at Health Personnel's contested hearing before the ALJ. According to Absolon's affidavit, when MDH was contacted by the Duluth News–Tribune, MDH's Public Information Officer, Buddy Ferguson, contacted the Licensing and Certification Section in order to respond to the inquiries. Absolon explained that after Ferguson contacted her section at MDH, she joined him as a spokesperson regarding this matter.

Absolon was specifically assigned to work with licensing home health care providers. Because of her position, she was asked by MDH's Public Information Officer to assist in responding to media inquiries. Therefore, responding to this inquiry was a job duty. Further, the public interest was served by permitting her to speak freely about this matter. Health Personnel provided home health care services to the public, and the public could have been hurt directly if the care provided was inadequate. *See Bol v. Cole,* 561 N.W.2d 143, 149 (Minn.1997) (holding "the public interest served must be one of paramount importance"). Thus, the district court correctly determined that Absolon had an absolute privilege and properly granted summary judgment in respondents' favor.

## II.

Our decision that Absolon had an absolute privilege in this case is dispositive. But because the district court concluded that both an absolute and a qualified privilege protected Absolon's statement, we also address qualified privilege.

■ If defamatory statements are made in good faith and without malice, a qualified or conditional privilege may be granted if that privilege is not abused. *Matthis,* 243 Minn. at 223, 67 N.W.2d at 416. For a qualified privilege to apply, a statement " 'must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause.' " *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 256–57 (Minn. 1980) (quoting *Hebner v. Great N. Ry.,* 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899)).

■ Here, a qualified privilege exists. First, the statement was made upon a proper occasion. Absolon's statement was made during a closed hearing. That does not matter. Respondents correctly point out that the hearing was closed to protect the privacy of individual patients' records rather than to protect the privacy of Health Personnel. At the hearing, Absolon's comments only reflected information on Personnel's continued noncompliance with licensing requirements.

Absolon also made the statement with proper motive. Appellants argue there is a material issue of fact regarding Absolon's motive. Despite appellants' assertion that there was animosity between MDH and Health Personnel, appellants provide no actual evidence of this animosity other than pointing to the correction orders and the fact that appellants challenged MDH's refusal to renew Personnel's license. There is no indication that Absolon made an attempt to seek out the press herself. Absolon made the statement pursuant to a request from MDH's Public Information Officer, Buddy Ferguson, that she provide a response to the News–Tribune's inquiry.

We reject appellants' argument that there is question of material fact as to whether the statement was made with reasonable or probable cause. MDH inspected Personnel on three occasions and discovered numerous violations of the licensing standards during each of the inspections. Violations cited in the first two surveys were *still uncorrected at the time of the third inspection.* Although Personnel argues the company attempted to comply with the MDH licensing requirements, Absolon's statement that Personnel had refused to correct cited problems is corroborated by the ALJ's recommendation that Personnel's license not be renewed. The Commissioner of Health affirmed this recommendation, as did this court on appeal. *In re Assessment & Denial of Renewal of License Issued to Health Personnel/Silver Lining Assisted Lifestyle,* No. C4–96–2056, 1997 WL 118126 (Minn.App. Mar.18, 1997).

 To defeat a qualified privilege, appellants must prove actual malice. *Stuempges,* 297 N.W.2d at 256 (quoting *Hebner,* 78 Minn. at 292, 80 N.W. at 1129). Whether a defendant acted with malice in making a defamatory statement is generally a question of fact. *Bol,* 561 N.W.2d at 150. The issue should not be submitted to a jury, however, if the evidence is insufficient for a finding of malice. *Frankson v. Design Space Int'l,* 394 N.W.2d 140, 144–45 (Minn.1986).

To prove actual malice, a plaintiff must show the statement was made " 'from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff.' " *Stuempges,* 297 N.W.2d at 257 (quoting *McKenzie v. William J. Burns Int'l Detective Agency, Inc.,* 149 Minn. 311, 312, 183 N.W. 516, 517 (1921)). "Malice cannot be implied from the statement itself or from the fact that the statement was false." *Bol,* 561 N.W.2d at 150.

> "Malice may be proved by extrinsic evidence of personal ill feeling, or by intrinsic evidence such as the exaggerated language of the libel, the character of the language used, the mode and extent of publication, and other matters in excess of the privilege."

*Frankson,* 394 N.W.2d at 144 (quoting *Friedell v. Blakely Printing Co.,* 163 Minn. 226, 231, 203 N.W. 974, 976 (1925) (citation omitted)).

Again, appellants' only claimed evidence of malice is their allegations that animosity existed due to MDH's issuance of correction orders and their challenge to MDH's refusal to renew Personnel's license. This evidence, taken alone, is insufficient, as a matter of law, to show malice on the part of Absolon for her comments to the press. MDH, in issuing correction orders, was doing nothing more than their job. Proper job performance is not a starting point to show "actual malice." The record shows no evidence that Absolon personally had any ill will toward appellants. There is no intrinsic evidence of actual malice in the statement itself. The one statement at issue is simply an accurate paraphrase of comments by Absolon.

## DECISION

The district court did not err in granting summary judgment to respondents. Absolon had an absolute privilege in this case. The statement in question was made in furtherance of her job duties, and it served the public interest. Absolon's statement was also protected by a qualified privilege. That privilege was not defeated by actual malice. Further, there are no material issues of fact in this case. We affirm the district court's summary judgment award.

**Affirmed.**