*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0573**

Loren J. Zutz, et al.,
Appellants,

vs.

John Nelson, et al.,
Respondents.

**Filed December 29, 2014
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Marshall County District Court
File No. 45-CV-08-59

Paul A. Sortland, Sortland Law Office, PLLC, Minneapolis, Minnesota (for appellants)

Sarah E. Bushnell, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Hudson, Presiding Judge; Peterson, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant watershed board managers challenge the summary-judgment dismissal of their defamation action against respondents, who are also watershed board managers. By notice of related appeal, respondents challenge the district court's denial of their

request for summary judgment under Minnesota's anti-SLAPP law. Because appellants are public officials and they failed to present sufficient evidence of actual malice, we affirm in part. But because respondents made a threshold showing that their statements constitute public participation under the anti-SLAPP law and respondents may be entitled to an attorney-fee award if they prevail on their anti-SLAPP motion, we reverse in part and remand.

**FACTS**

In 2006, appellants Loren Zutz and Eldon Elseth were appointed as managers of the Middle Snake Tamarac Rivers Watershed District. Its purpose is to "conserve the natural resources of the state by land use planning, flood control, and other conservation projects." Minn. Stat. § 103D.201, subd. 1 (2012). The watershed district is operated by a seven-member board of managers. *Zutz v. Nelson*, 788 N.W.2d 58, 60 (Minn. 2010). Respondents John Nelson and Arlyn Stroble were also managers when appellants were appointed.

Soon after their appointments, appellants requested employee payroll information from the board and the district secretary because they were "concerned that employees were receiving unauthorized compensation." Nick Drees, the watershed district administrator, provided the board with information about district employees' "monthly gross wages, gross salary, overtime hours, gross overtime pay, and comp time for 2005 and 2006." Appellants requested additional payroll information, "including details from specific payroll checks and completed treasurer reports." Drees told appellants that this

2

information was private under the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. §§ 13.01-.90 (2012), and that it could not be provided.[1]

Unsatisfied with that response, Zutz went to the watershed district's bank and requested "copies of bank statements and employees' canceled payroll checks for certain dates between 2003 and 2006." The bank gave Zutz copies of the canceled checks because he was an authorized signatory on the watershed district's account. The checks contained information regarding the employee's name, personal address, payroll check number, net pay, date of payment, and in some cases the employee's endorsement and numbers associated with the financial institution where the check was deposited. Zutz showed copies of the checks to Elseth and the watershed district manager, and he later sent copies of the checks to the Minnesota Office of the State Auditor.

At the board's public meeting on June 18, 2007, watershed-district employees complained that the watershed-district managers had obtained private information from their payroll checks without permission from the board or the individual employees. A partial transcript of the meeting reflects the following discussion between appellants, respondents, a board member identified only as Ben, and Jeff Hane, the watershed district's attorney:

> BEN: If the bank can give it after consulting with your attorneys what does that mean[?]
>
> HANE: That doesn't necessarily mean they violated the banking law, but just because they followed the

---

[1] The district court identified Drees as the watershed district's responsible authority under the MGDPA. *See* Minn. Stat. § 13.02, subd. 16 (defining the role of responsible authorities under the MGDPA). Appellants contest that identification.

|           | banking laws doesn't mean that Mr. Zutz did not violate data practice act law. |
|-----------|---|
| BEN: | Okay. And so what are we doing about finding out if he did or not? Where is that at? |
| [NELSON]: | **I don't think there [is any] question [that Zutz violated the data practices act].** He had no authority to get this. He is not the [designated authority]. |
| [ZUTZ]: | John, could I—could you show me the document on that? |
| [NELSON]: | I don't have a document. |
| [ZUTZ]: | No, you talked about you should be able to show me some information on it. |
| HANE: | Well, it's my opinion that as counsel for the district that the data practice act is clear, not to designate a person to obtain that information, you obtained it without authority or consent of the watershed district. I think you violated the data practice act, and that's Chapter 13.05. |

. . . .

| HANE: | That's the problem is going and getting [the payroll checks], right, taking them out of the bank, examining the signature on the back, knowing where they deposit it, seeing . . . . The act of signing them is administered – someone's got to do this, okay. |
|-------|---|
| [ELSETH]: | Alright. |
| HANE: | But purposeful retrieval of them is a violation of the data practice act. |

. . . .

| [NELSON]: | I think it needs to be pursued if there is **laws being broken by board members, enough is enough.** We do not need to violate our employees' rights [in] my personal opinion. . . . |
|-----------|---|

. . . .

| [ZUTZ]: | You know, you're sitting here quizzing me and stuff, and I guess if your legal counsel is questioning me, I would like legal counsel to represent me. So I guess I would ask the board to supply legal counsel to me being you seem to be their legal counsel. |
|----------|---|

. . . .

4

[STROBLE]: Well, I believe **there is no way we should supply legal counsel to one of the board members** when the majority of the board—I'm not saying the majority of the board, but some of the board members feel that definitely was against the law to start with, that why would we be supplying legal counsel for some—that's just—common sense tells you that's crazy.

(Emphasis added.)

Appellants sued respondents for defamation per se, slander, and negligent defamation, alleging that respondents' statements in bold font above were defamatory and damaged their community reputations and stature. Appellants also sought a declaration that they did not violate Minnesota law.

Respondents moved for judgment on the pleadings under Minnesota Rule of Civil Procedure 12.03. The district court granted the motion, concluding that respondents had absolute immunity, and it dismissed appellants' complaint with prejudice. The case made its way to the Minnesota Supreme Court, which reversed and remanded, concluding "that the people of Minnesota are better served by the application of a qualified, rather than absolute, privilege to members of watershed district boards." *Zutz*, 788 N.W.2d at 66.

On remand, Hane and the Marshall County Attorney moved to quash subpoenas that appellants had served on them. The district court granted the motion. Appellants petitioned for a writ of mandamus, arguing that the district court had abused its discretion, but a special-term panel of this court denied the petition. *In re Zutz*, No. A11-1150 (Minn. App. Aug. 3, 2011) (order).

5

Later, respondents moved for summary judgment, arguing that appellants' claims are barred because the allegedly defamatory statements are: (1) true, (2) protected by a qualified privilege, (3) protected because appellants are public officials, (4) protected under Minnesota's anti-SLAPP law, and (5) protected under the *Noerr-Pennington* doctrine. The district court granted summary judgment for respondents. It concluded that the allegedly defamatory statements are true because appellants "failed to comply with" the requirements of the MGDPA. It also concluded that appellants did not present sufficient evidence that respondents acted with malice or actual malice. But the district court rejected respondents' arguments for relief under Minnesota's anti-SLAPP law and the *Noerr-Pennington* doctrine.

In this appeal, appellants challenge the district court's grant of summary judgment, arguing that they did not violate the MGDPA and that they raised a genuine issue of material fact regarding malice and actual malice. By notice of related appeal, respondents challenge the district court's conclusion that the anti-SLAPP law is inapplicable.

**D E C I S I O N**

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). Appellate courts "review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and

6

whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761.

## I.

We first review the district court's conclusion that appellants failed to present sufficient evidence that respondents made the allegedly defamatory statements with actual malice. "A public official . . . cannot recover damages for publications of false and defamatory content which relate to his or her official conduct *unless* he or she proves that the statement was made with 'actual malice.'" *Britton v. Koep*, 470 N.W.2d 518, 520 (Minn. 1991) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279, 84 S. Ct. 710, 725 (1964)). "Actual malice means knowledge that the statement was false or was made with reckless disregard of whether it was true or false." *Id.* (quotation omitted). "[R]eckless disregard requires that a defendant make a statement while subjectively believing that the statement is probably false." *Chafoulias v. Peterson*, 668 N.W.2d 642, 655 (Minn. 2003) (quotation omitted). "The plaintiff has the burden of proving actual malice with convincing clarity." *Britton*, 470 N.W.2d at 520 (quotation omitted).

"On appeal from summary judgment in public figure defamation cases, the test is whether the evidence in the record could support a reasonable jury finding that the plaintiff has shown actual malice by clear and convincing evidence." *Foley v. WCCO Television, Inc.*, 449 N.W.2d 497, 503 (Minn. App. 1989), *review denied* (Minn. Feb. 9,

7

1990).  "A genuine issue of fact as to actual malice exists only if the facts permit the conclusion that the defendants in fact entertained serious doubts as to the truth of the publication."  *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 488 (Minn. 1985) (quotation omitted).

Appellants acknowledge that they are public officials and that they must present sufficient evidence of actual malice to survive summary judgment.  But appellants do not point us to any statements in their summary-judgment affidavits that show respondents made the allegedly defamatory statements with "knowledge that the statement[s were] false" or made the statements "with reckless disregard of whether [they were] true or false."  *Britton*, 470 N.W.2d at 520.  Appellants argue that the district court failed to consider whether respondents engaged in "purposeful avoidance of the truth" and that this court should therefore remand the case for a determination regarding that issue.  But appellants do not point to any evidentiary support for their argument; they merely assert that respondents "were certainly guilty of engaging in 'purposeful avoidance of the truth.'"  That conclusory assertion is unavailing.  *See Harvet v. Unity Med. Ctr., Inc.*, 428 N.W.2d 574, 579 (Minn. App. 1988) ("[A]llegations made by appellant in support of her claim of malice are based on conjecture and speculation and are insufficient to create a jury question.").

Appellants also argue that the district court's refusal to allow them to depose the watershed district's attorney, Jeff Hane, prevented them from uncovering evidence of respondents' beliefs regarding the truth of their statements.  Appellants' suggestion that their lack of evidentiary support is due to their inability to depose attorney Hane is

8

unavailing. Although appellants were not allowed to depose Hane, they deposed respondents. And appellants do not satisfactorily explain why they could not have questioned respondents regarding their reliance on Hane's legal opinion.

Lastly, appellants argue that whether respondents acted with reckless disregard for the truth is a jury question. "Whether a defendant acted with malice in making a defamatory statement is generally a question of fact." *Buchanan v. Minn. State Dep't of Health*, 573 N.W.2d 733, 738 (Minn. App. 1998), *review denied* (Minn. Apr. 30, 1998). "The issue should not be submitted to a jury, however, if the evidence is insufficient for a finding of malice." *Id.* We conclude, de novo, that appellants' evidence is insufficient to support a finding of actual malice by clear-and-convincing evidence. *See Chafoulias*, 668 N.W.2d at 655. Summary judgment is therefore appropriate.

Because the district court properly granted summary judgment on the ground that appellants failed to establish a genuine issue of material fact regarding the existence of actual malice, we do not review the district court's alternative grounds for granting summary judgment.

**II.**

By notice of related appeal, respondents challenge the district court's rejection of their request for summary judgment under Minnesota's anti-SLAPP law, Minn. Stat. §§ 554.01-.05 (2012). SLAPP stands for "Strategic Lawsuits Against Public Participation," and SLAPP suits are generally filed "to use litigation to intimidate opponents' exercise of rights of petitioning and speech." *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 227-28 (Minn. 2014) (quotation omitted). The anti-

SLAPP law allows a party to bring a motion to "dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation." Minn. Stat. § 554.02, subd. 1.

"[T]he first step in evaluating an anti-SLAPP motion is to determine whether the party seeking dismissal under the anti-SLAPP statutes has made a threshold showing that the underlying claim materially relates to an act of the moving party that involves public participation." *Leiendecker*, 848 N.W.2d at 229 (quotations omitted). "Once the moving party has made its threshold showing, the second step is to determine whether the party responding to the motion has produced clear and convincing evidence that the moving party is not entitled to immunity." *Id.* We review the district court's application of the anti-SLAPP law de novo. *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 840 (Minn. 2010).

The district court denied respondents' anti-SLAPP motion because it concluded that the anti-SLAPP law does not apply in this case. The district court reasoned, in part, that there was no discernable reason to apply the anti-SLAPP statutes "to public officials who are already protected by qualified immunity." We disagree. Even if respondents are protected by qualified immunity, there is a discernable reason to nonetheless apply the anti-SLAPP law: the anti-SLAPP law provides for attorney fees and damages. Minn. Stat. § 554.04. Moreover, the anti-SLAPP law is not an exclusive remedy. *See* Minn. Stat. § 554.05 ("Nothing in this chapter limits or precludes any rights the moving party or responding party may have under any other constitutional, statutory, case, or common law, or rule.").

10

The district court also reasoned that respondents were acting as members of a governing body and not as private citizens when they made the statements in question and that they did not provide any authority indicating that the anti-SLAPP law protects public officials. Essentially, the district court concluded that respondents did not make the required threshold showing of public participation.

The burden on the moving party under the anti-SLAPP law is minimal but requires more than a mere assertion that public participation is involved. *Stengrim*, 784 N.W.2d at 841. The moving party "must make a threshold showing that the acts that are 'materially' related to the responding party's claim are themselves public participation." *Id.* "Public participation" is defined as "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn. Stat. § 554.01, subd. 6. The term "government" is defined to include "a branch, department, agency, official, employee, agent, or other person with authority to act on behalf of the federal government, this state, or any political subdivision of this state, including municipalities and their boards, commissions, and departments, or other public authority." *Id.*, subd. 2.

Respondents contend that their allegedly defamatory statements constitute public participation. They argue that statements made during "engagement in a public meeting by an appointed official about a topic of legitimate concern to the government entity and the public is the quintessential case of public participation." They also argue that the plain language of the statutory definition of public participation covers the statements made in this case. They further argue that the definition is broad and that to affirm the district court on this issue, this court "must read language into the statutory definition,"

11

such as a requirement that the speech be made by a private citizen and not by a government official. Respondents' arguments find support in the plain language of the anti-SLAPP law and in analogous federal caselaw. We address each in turn.

First, the plain language of the anti-SLAPP law does not preclude its application to public officials. "If a statute, construed according to ordinary rules of grammar, is unambiguous, a court may engage in no further statutory construction and must apply its plain meaning." *Freeman v. Swift*, 776 N.W.2d 485, 489 (Minn. App. 2009), *review denied* (Minn. Mar. 16, 2010). The statutory definition of public participation is "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn. Stat. § 554.01, subd. 6. In *Freeman*, this court considered the statutory definition of public participation and concluded that it is unambiguous. 776 N.W.2d at 489. The plain language of the statutory definition does not exclude respondents' statements at the watershed district meeting. The district court appears to have concluded that the anti-SLAPP law only protects individuals who are acting *solely* as private citizens. But there is no such requirement in the plain language of the statute. *See* Minn. Stat. § 554.01, subd. 6.

Moreover, the definition of "government" covers both individual district managers and the watershed district as a whole. *See* Minn. Stat. § 554.01, subd. 2 (defining "government" to include both individual officials and political subdivisions such as boards). Respondents argue that they made their statements in an effort to convince other district managers to respond to the situation "in a way that would preserve [d]istrict finances and employee relationships." Respondents' attempts to influence other

12

watershed district managers regarding the district's response to an allegation that district managers violated the privacy rights of its employees satisfies the definition of speech "that is genuinely aimed in whole or in part at procuring favorable government action." *See id.*, subds. 2, 6.

Second, respondents draw our attention to *Fischer Sand & Aggregate Co. v. City of Lakeville*, which indirectly supports the contention that statements made by citizens while serving as public officials may constitute public participation. 874 F. Supp. 957 (D. Minn. 1994). *Fischer Sand* addressed whether the *Noerr-Pennington* doctrine applies to public officials. *Id.* at 958-59. "The *Noerr-Pennington* doctrine protects the right of citizens to 'petition the Government for redress of grievances,' U.S. Const. amend. I, by immunizing persons from liability for injuries allegedly caused by their activities and participation in public processes with the intent of influencing public policy decisions." *Id.* at 958. The federal court concluded that government officials acting in their official capacity are entitled to the protection of the *Noerr-Pennington* doctrine. *Id.* at 959. The federal court reasoned that "it is more likely that such government defendants act with the intent of advancing the public interest in exercising their First Amendment rights than private petitioners; this buttresses the justification for clothing the Defendants with immunity from suit arising from their petitioning activities." *Id.* Because the *Noerr-Pennington* doctrine and Minnesota's anti-SLAPP law both seek to protect the right of citizens to engage in speech and conduct that is intended to influence government decisions, the reasoning in *Fischer Sand* is persuasive and supports application of the anti-SLAPP law to public officials.

13

Appellants argue that the anti-SLAPP law was not intended to cover lawsuits against government officials. But we cannot look to legislature's intent as a basis to deny relief under the anti-SLAPP law when the relevant statutory language is unambiguous. *See Freeman*, 776 N.W.2d at 489. And although application of the anti-SLAPP law here is unprecedented and unusual, we cannot say that the extremely broad statutory language does not allow it.

In sum, the statutory definition of "public participation" covers respondents' statements at the watershed district meeting, and respondents made the necessary threshold showing under the anti-SLAPP law. The next step in the analysis is to determine whether appellants can produce clear-and-convincing evidence that respondents are not entitled to immunity. *See Leiendecker*, 848 N.W.2d at 229 (describing the process that governs analysis of an anti-SLAPP motion). The district court did not engage in that step of the analysis, and it is not appropriate for this court to do so in the first instance on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1998) (stating that a reviewing court generally considers only issues presented to and decided by the district court). We therefore refuse respondents' request to reverse "with direction for the district court to award the attorney fees mandated by [the anti-SLAPP law]."

We nonetheless observe that, although the availability of qualified immunity is not a basis to conclude that the anti-SLAPP law is inapplicable, that consideration may be relevant if respondents prevail under the anti-SLAPP law and the district court must determine reasonable attorney fees. *See Green v. BMW of North America, LLC*, 826

14

N.W.2d 530, 536 (Minn. 2013) (stating that under Minnesota's lemon law and other fee-shifting statutes with similar purposes, all relevant circumstances should be considered when awarding attorney fees, including "the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client" (quotations omitted)).  And if respondents prevail, the resulting award of attorney fees and costs must be limited to the fees and costs associated with the bringing of their anti-SLAPP motion. *See* Minn. Stat. § 554.04, subd. 1 ("The court shall award a moving party who prevails in a motion under this chapter reasonable attorney fees and costs associated with the *bringing of the motion*." (emphasis added)).

In conclusion, we affirm the district court's grant of summary judgment for respondents on the ground that appellants did not raise a genuine issue of material fact regarding actual malice.  But we reverse the district court's denial of relief under the anti-SLAPP law and remand for further proceedings on respondents' anti-SLAPP motion, consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**